**NORTH GEORGIA ELECTRIC MEMBERSHIP CORPORATION, Plaintiff,**

v.

**CITY OF CALHOUN, GEORGIA, Defendant.**

**Civ. A. No. 4:–91–cv–57–HLM.**

United States District Court, N.D. Georgia, Rome Division.

Jan. 2, 1992.

James C. Brim, Jr., Office of James C. Brim, Jr., Camilla, GA, Lemuel Hugh Kemp, Kinney, Kemp, Pickell, Sponcler & Joiner, Dalton, GA, Herbert S. Sanger, pro hac vice, Charles W. Van Beke, pro hac vice, Wagner, Myers & Sanger, Knoxville, TN, for plaintiff.

Thomas J. Campbell, Office of Thomas J. Campbell, Calhoun, GA, L. Clifford Adams, Jr., Robert J. Middleton, Jr., Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, GA, for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

This declaratory judgment action is before the Court on Defendant's Motion to Dismiss.

North Georgia Electric Membership Corporation, ("Plaintiff"), has brought the instant action seeking a declaration that the City of Calhoun's, ("Defendant"), imposition of a franchise tax is prohibited by the Tennessee Valley Authority Act and the Supremacy Clause of the United States Constitution.

The action is, apparently, only the latest round in a series of lawsuits between these parties. By order of this Court, dated July 20, 1988, a previous lawsuit filed by the Plaintiff was ended by a grant of summary judgment in favor of the Defendant as to all of Plaintiff's antitrust and civil rights claims and by the dismissal of Plaintiff's state taxation claims. In its July 20, 1988, order this Court held that Plaintiff's claims regarding the Defendant's franchise tax were barred by

the Tax Injunction Act, 28 U.S.C. § 1341, and independently by principles of comity. This Court indicated that such claims should be litigated, if at all, in state courts. Since the entry of this Court's July 20, 1988 order, the Defendant has instituted an action in the Superior Court of Gordon County to force Plaintiff to pay back franchise taxes. This state court action has been pending for approximately two years.

Plaintiff is a large rural electric cooperative organized under the laws of the State of Georgia and which serves several Georgia counties. The Defendant municipality is the county seat of Gordon County. Defendant's franchise tax was enacted, apparently, in 1987. The tax is imposed for use of the municipal streets and facilities and in the amount of 4% of the gross sales of electricity within municipal limits.

In the instant case Plaintiff contends that the doctrine of federal governmental immunity from taxation bars the imposition of a franchise tax on its gross sales. Plaintiff argues that it is a "franchise" of an agency of the United States, the Tennessee Valley Authority, and is therefore specifically exempted by Congress from this type of taxation.

Defendant, supporting the instant motion to dismiss, argues that the Tax Injunction Act, 28 U.S.C. § 1341, bars the exercise of federal jurisdiction over Plaintiff's tax challenge. Second, Defendant argues that under the federal abstention doctrine this case should be dismissed to allow the prior pending proceeding in the Superior Court of Gordon County to go forward.

*Tax Injunction Act, 28 U.S.C. § 1341*

█ The Tax Injunction Act provides as follows:

"The district court shall not enjoin, suspend or restrain the assessment levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state."

28 U.S.C. § 1341. The provision recognizes that a federal court order to restrain the collection of taxes inevitably interferes with the state's internal economy. *See, e.g., Moe v. Confederated Salish and Kootenai Tribes of the Flathead Reservation,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). Such interference with the fiscal affairs of a state implicates the Tenth Amendment. *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). "Accordingly, equitable principles, principles of federalism, and 'recognition of the imperative need of a State to administer its own fiscal operations' require that special restrictions be placed on federal jurisdiction when the validity of a state tax law is challenged." *A Bonding Co. v. Sunnuck,* 629 F.2d 1127, 1130 (5th Cir.1980), quoting *Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976). 28 U.S.C. § 1341 is the present codification of this practice of judicial restraint. *Id.,* at 1130.

█ The Tax Injunction Act applies to local and municipal taxes. *See, Noble v. Joint City–County Board of Tax Assessors,* 672 F.2d 872 (11th Cir.1982); *A. Bonding Company v. Sunnuck,* 629 F.2d 1127 (5th Cir.1980). Moreover, the gross receipts franchise tax imposed by the Defendant is a "tax" for the purposes of the Tax Injunction Act. *See, Robinson Protective Alarm Company v. City of Philadelphia,* 581 F.2d 371, 376 (3rd Cir.1978).

Plaintiff argues, however, that it is an entity so closely connected with the federal government that, like the federal government itself, it is not barred by the Tax Injunction Act from asserting a sovereign immunity challenge to a state or local tax.[1] Plaintiff contends that it is an instrumentality of the United States, or at least an entity in which the United States has a real and significant interest.

---

1. Despite the fact that the issue of whether North Georgia Electric Membership Corporation was entitled to an exemption from the Tax Injunction Act was already litigated in this Court, Plaintiff argues that res judicata is no bar to its present argument. First, Plaintiff points out that Defendant failed to assert the affirmative defenses of res judicata and collateral estoppel in its answer. Second, Plaintiff contends that the dismissal of its claims in the prior adjudication was not a decision on the merits. Finally, Plaintiff argues that new authority has shown conclusively that it is a "franchise" of the TVA, and thereby exempted from state taxation.

■ Plaintiff is correct that the United States, and instrumentalities of the United States, are not barred by the Tax Injunction Act from seeking to enjoin the enforcement of a state tax law in a federal court. *Department of Employment v. United States,* 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966); *United States v. Sullivan,* 270 F.Supp. 236 (D.Conn.1967). This exception to the Tax Injunction Act has been expanded to reach an action brought by a private party in whom the United States holds an express interest and "whom Congress intended to have the same access to federal court as that available to the United States." *National Carriers' Conference Committee v. Heffernan,* 440 F.Supp. 1280, 1283 (D.Conn.1977). *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1975).

In *Moe,* supra, the Supreme Court found that an indian tribe, which sought to challenge certain state taxes, was not barred by the Tax Injunction Act from asserting their challenge in federal court. The Court found that private entities in which the United States had a "real and significant interest" and which could point to some congressional expression of intent that they be accorded the same access to federal court as that enjoyed by the United States, were not barred from challenging a state tax in situations where the United States could have prosecuted the suit on their behalf.

In that case, the indian tribe was considered an entity in which the United States had a "real and significant interest." The Court also found that a jurisdictional statute, 28 U.S.C. 1362, had given the federal courts original jurisdiction over civil actions brought by indian tribes arising under the Constitution, statutes, or treaties of the United States. *Moe,* 425 U.S., at 471–72, 96 S.Ct. at 1640–41. The Court read the legislative his-

tory of 28 U.S.C. 1362, as expressing a congressional intent to give the tribe the same access to federal courts that the United States would have if it brought suit on behalf of the tribe. *Moe,* 425 U.S., at 472–73, 96 S.Ct. at 1640–41. Lastly, the Court found that suit was one that the United States could have brought, and concluded that since the Tax Injunction Act could not bar the United States, it should not bar the private plaintiff either. *Moe,* 425 U.S., at 473–74, 96 S.Ct. at 1641. *See also, Heffernan,* 440 F.Supp., at 1284.

In the instant case, Plaintiff argues that the ruling in *Moe* entitles it to assert its tax immunity claim in federal court. Plaintiff contends it is a franchise of the Tennessee Valley Authority and therefore either an instrumentality of the United States or at least an entity "in which the United States has a real and significant interest." *Moe,* 425 U.S., at 474, 96 S.Ct. at 1641. Plaintiff points to 16 U.S.C. 8311[2], and 28 U.S.C. 1331, as an expression of congressional intent that franchises of the TVA, such as Plaintiff, should be accorded the same treatment as the United States. Lastly, since the action is based on federal immunity from taxation, Plaintiff implies that the action could have been instituted by the federal government on its behalf. Plaintiff concludes that an entity such as itself, like the indian tribe in *Moe,* is not barred by the Tax Injunction Act from proceeding with its challenge to the municipal franchise tax in federal court.

The rest of Plaintiff's argument is an attempt to have this Court reach the merits of its action during its consideration of this jurisdictional motion. Plaintiff has continued to argue that a decision on the merits of its declaratory judgment complaint is inextricably intertwined with a decision on the instant motion to dismiss.[3] "If [Plaintiff] is a fran-

---

**2.** 16 U.S.C. § 8311 provides that franchises of the TVA are exempted from taxation in any form by any state, county, municipality, or any subdivision or district thereof.

**3.** Plaintiff filed a motion for summary judgment in this declaratory judgment action which, Plaintiff contends, will be dispositive. Defendant, however, obtained an extension of time allowing it twenty days following the Court's disposal of

the instant motion in which to respond to the Plaintiff's motion. The extension was granted over Plaintiff's objection. Plaintiff then filed a motion for reconsideration, followed by a motion for clarification, both of which argued that a decision on the instant motion to dismiss was so intertwined with a decision on the merits that the two could not be handled separately. It appears, therefore, that the Court has rejected Plaintiff's

chise of TVA, and, as such, is immune from the Tax, then the Tax Injunction Act is inapplicable. However, if [Plaintiff] is not a franchise of TVA and has not been granted federal government immunity from the Tax, then the Tax Injunction Act applies." Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, at 10.

As this Court has repeatedly stated, however, a decision on the instant motion to dismiss is not dependent on this Court's view of the merits of Plaintiff's claim. Assuming, without deciding, that Plaintiff is a franchise of the TVA, it is nonetheless clear that Plaintiff cannot avoid the bar of the Tax Injunction Act.

Several courts have visited the analysis set forth in *Moe* and noted the Supreme Court's reliance on the existence of a *jurisdictional* statute indicating a Congressional intent that the party in question be given access to the federal courts similar to that of the United States. *See, Southern Railway Company v. State Board of Equalization,* 715 F.2d 522 (11th Cir.1983); *Housing Authority v. State of Washington,* 629 F.2d 1307 (9th Cir.1980); *Navajo Tribal Utility Authority v. Arizona Department of Revenue,* 608 F.2d 1228 (9th. Cir.1979); *National Carriers Conference Committee v. Heffernan,* 440 F.Supp. 1280 (D.Conn.1977). In *Southern Railway Company,* for example, the Eleventh Circuit described the *Moe* decision as:

"an instance in which a jurisdictional statute properly took precedence over the equitable restraint doctrine and its statutory counterpart, section 1341. The Supreme Court gave effect to a district court decision enjoining Montana's collection of certain vendor licensing and sales taxes from indian merchants. In deciding that abstention was improper *the Court relied on a jurisdictional statute, enacted ten years earlier, which reflected a congressional intent to provide indian nations with a federal forum for certain civil actions.* See, 28 U.S.C. § 1362."

*Southern Railway Company,* 715 F.2d, at 530 (emphasis supplied).

The cases which have applied the analysis laid out in *Moe* to situations involving the Tax Injunction Act have based their conclusions on the existence, or lack thereof, of some jurisdictional statute indicative of Congressional intent to afford access to the federal courts. In *Heffernan,* supra, for example, fiduciaries of the Railroad Employees National Dental Plan sued to enjoin a tax imposed by the state of Connecticut on benefits paid out under the plan. The Court, in reliance on *Moe,* ruled that their suit was not barred by the Tax Injunction Act. Of primary importance to the Court was the fact that a specific jurisdictional statute in ERISA indicated a congressional intent that private parties's access to the federal courts be no less than that of the Secretary of Labor. *See, Heffernan,* 440 F.Supp., at 1284. The Court explained, "As in *Moe,* the plaintiff here relies on a jurisdictional statute enacted after § 1341, 29 U.S.C. § 1132(e)(1).... Under the statute either a 'participant, beneficiary or fiduciary,' 29 U.S.C. § 1132(a)(3), or the Secretary of Labor, 29 U.S.C. § 1132(a)(5), can sue to enjoin any act or practice which violates Title I of ERISA or to obtain other equitable relief." *Id.,* at 1284. In contrast, the Ninth Circuit in *Housing Authority,* supra, held that the lack of similar jurisdictional statute defeated federal jurisdiction over the state tax claims of the Housing Authority of the City of Seattle. "Without an explicit directive from Congress analogous to § 1362, we are reluctant to extend the 'special interest' rationale beyond its application to indian tribes." *Id.* 629 F.2d, at 1313.

■ In the instant case, Plaintiff is unable to point to any jurisdictional statute indicating a Congressional intent that TVA franchises, such as they claim to be, are to be afforded an access to the federal courts similar to that of the United States. Plaintiff appears to assert 16 U.S.C. § 8311, which exempts the TVA and its franchises from state taxation, as an expression of Congressional intent that franchises of the TVA be treated the same as the United States. The similarity asserted, however, is simply that both are exempt from state taxation. 16

argument on this point three times already. This

rejection will make four.

U.S.C. § 8311 does not refer to federal court jurisdiction.

Plaintiff also attempts to draw the requisite expression of congressional intent from 28 U.S.C. § 1331.[4] This attempt is based on the similarity in language between that provision, which establishes federal question jurisdiction for all plaintiffs, and the language of 28 U.S.C. § 1345,[5] which provides federal court jurisdiction for suits brought by the federal government. Plaintiff argues that the similarity in language indicates that Congress intended for any plaintiff, a category which includes this plaintiff, to have the same access to federal court as that enjoyed by the United States government.

Plaintiff's argument on this point is unpersuasive. Each of the jurisdictional statutes relied upon to construe an exception to the Tax Injunction Act were explicit Congressional pronouncements that a discrete group be given special access to federal court. In *Moe*, for example, 28 U.S.C. § 1362 refers specifically to "Indian tribes recognized by the Secretary of the Interior" and in *Heffernan*, 29 U.S.C. § 1132(e)(1) refers specifically to any ERISA "participant, beneficiary, or fiduciary." In contrast, 28 U.S.C. § 1331, is a general grant of federal question jurisdiction to the federal district court. The statute falls short of expressing a congressional intent that the franchises of TVA be given enhanced access to federal court.

This Court concludes, therefore, that assuming Plaintiff is a franchise of the TVA, and even an entity in which the United States has a "real and significant interest," Plaintiff is unable to point to any expression of congressional intent that it be afforded access to the federal courts similar to that of the United States. Consequently, Plaintiff is unable to bring itself within the exception to the Tax Injunction Act set forth in *Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976).

▮ Plaintiff has also failed to convince this Court that it is an "instrumentality" of the United States for purposes of the Tax Injunction Act. *See, Federal Land Bank of Witchita v. Board of County Commissioners*, 582 F.Supp. 1507 (D.Co.1984). Plaintiff is incorporated under the laws of Georgia. The fact that the franchise contract between Plaintiff and the TVA places certain restrictions on the operation of Plaintiff's concern does not, without more, transform Plaintiff into an "instrumentality" of the federal government.

▮ Having found, therefore, that the Tax Injunction applies to Plaintiff's claims, the remaining inquiry is whether the Tax Injunction Act operates to bar this Court from hearing Plaintiff's claims. This Court concludes that it does. The state of Georgia maintains a judicial system with plenary power to adjudicate the validity of the gross receipts tax contained in Defendant's tax ordinance. Plaintiff clearly has a plain, speedy, and efficient remedy under state law. *Ayers v. Polk County, Georgia*, 697 F.2d 1375 (11th Cir.1983); *Noble v. Joint City–County Board of Tax Assessors*, 672 F.2d 872 (11th Cir. 1982); *Moss v. State of Georgia*, 655 F.2d 668 (5th Cir.1981).[6]

Plaintiff's challenge to Defendant's franchise tax is also barred independently on grounds of comity. *See, Fair Assessment In Real Estate Ass'n v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). As the

---

4. 28 U.S.C. 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

5. 28 U.S.C. § 1345 provides: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

6. This Court is aware of the unpublished decision, cited by the Plaintiff, in which a District

Court in the Northern District of Alabama reached the merits of an action brought by a franchise of the TVA to challenge a municipal tax. *See, City of Sheffield v. Town of Cherokee*, No. 89–AR–5073–NW (N.D.Ala. October 12, 1989). The Court in *City of Sheffield* stated that it had jurisdiction over the claim based on 28 U.S.C. 1331, since the action squarely presented a question of federal law. The opinion does not address the argument raised here that the Tax Injunction Act bars federal jurisdiction of the claim. This Court can only conclude that such arguments were not raised.

Court stated in *Ayers v. Polk County,* 697 F.2d 1375 (11th Cir.1983):

"The overriding concern of *McNary* is respect for state revenue collection systems and that 'the very maintenance of the [federal court] suit would intrude on the enforcement of the state [tax] scheme.'"

*Id.* at 1376. Moreover, it appears that the very issues which Plaintiff seeks to litigate in this Court are now before the Gordon County Superior Court, that the Gordon County litigation has been underway for two years and is presently at the summary judgment stage. This Court should defer to the state court system for adjudication of this dispute. *See, Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Lake Lucerne Civic Ass'n v. Dolphin Stadium Corp.,* 878 F.2d 1360 (11th Cir.1989).[7]

Accordingly, based on the above, Defendant's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

---

7. Applying the specific factors used by the Eleventh Circuit in assessing the propriety of abstention this Court considered three to mitigate strongly in favor of abstention: (1) There is strong possibility that federal adjudication of the instant declaratory judgment action would result in piecemeal litigation; (2) the Superior Court of Gordon County has entertained the action for two years and has reached the summary judgment stage while the instant action remains at the jurisdictional stage; (3) each forum is adequate to protect the parties' rights.