**NORTH GEORGIA ELECTRIC MEMBERSHIP CORPORATION, Plaintiff–Appellant,**

v.

**CITY OF CALHOUN, GEORGIA, a Municipal Corporation, Defendant–Appellee.**

No. 92–8114.

United States Court of Appeals, Eleventh Circuit.

April 22, 1993.

Herbert S. Sanger, Jr., Knoxville, TN, James C. Brim, Jr., Camilla, GA, Charles W. Ban Beke, Wagner, Myers & Sanger, Knoxville, TN, L. Hugh Kemp, Kinney, Kemp, Pickell, Sponcler & Joiner, Dalton, GA, for plaintiff-appellant.

L. Clifford Adams, Jr., Hurt, Richardson, Garner, Todd & Cadenhead, Robert J. Middleton, Paul M. Talmadge, Jr., Atlanta, Ga., for defendant-appellee.

Before KRAVITCH, Circuit Judge, GODBOLD and OAKES *, Senior Circuit Judges.

* Honorable James L. Oakes, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

OAKES, Senior Circuit Judge:

The North Georgia Electric Membership Corporation ("North Georgia"), a nonprofit rural collective which distributes electricity produced by the Tennessee Valley Authority ("TVA") to a large portion of northern Georgia, has refused to pay a franchise fee (the "Tax") imposed in 1987 by the City of Calhoun, Georgia (the "City" or "Calhoun"). The City has attempted to levy its 4% Tax on North Georgia's gross sales of electricity within the City limits, which in 1988 exceeded $4.7 million. North Georgia has roughly 800 customers within the City of Calhoun, all on land annexed by the City in recent years. North Georgia first brought suit to invalidate the tax in the District Court for the Northern District of Georgia, Harold L. Murphy, *Judge*, on antitrust, commerce clause, due process, and equal protection grounds. Judge Murphy dismissed the claim on June 20, 1988, reasoning that the Tax Injunction Act, 28 U.S.C. § 1341 (1988) and principles of comity barred a federal court from hearing any challenge to the tax. The court rejected North Georgia's contention that it was a federal instrumentality to which the Tax Injunction Act does not apply. *North Georgia v. City of Calhoun*, No. 4:87–CV–218–HLM (N.D.Ga. July 20, 1988). North Georgia did not appeal.

On April 11, 1989, the City brought suit in a Georgia state court, seeking to compel North Georgia to pay $188,774.02 in taxes due under the Tax for the calendar year of 1988, and seeking a declaration that North Georgia owed the tax for future periods. That case remains undecided. On March 14, 1991, North Georgia responded with this litigation seeking a declaratory judgment in federal district court—again before Judge Murphy—that the tax was invalid. In this suit, for the first time, North Georgia argued that the Tax violated § 13 of the Tennessee Valley Authority Act of 1933, 16 U.S.C. § 831*l* (1988) (the "TVA Act"), which exempts TVA and its franchises from state and local taxes.[1] The City did not raise the issue of collateral estoppel

in its answer initially, but on May 9, 1991, the City moved to amend its answer to include as a new defense that: "[p]laintiff's claim is barred by the doctrines of res judicada [sic] and collateral estoppel." The district court granted this motion on July 1, 1991.

On January 2, 1992, the district court dismissed North Georgia's complaint. 820 F.Supp. 1403. North Georgia once again argued that it was a federal instrumentality. Nonetheless, the district court held for a second time that the Tax Injunction Act and principles of comity barred a federal court from hearing the case. The district court mentioned, in a footnote, that the City had raised collateral estoppel on the jurisdictional issue as a defense, but stated that "Plaintiff points out that Defendant failed to assert the affirmative defenses of res judicata and collateral estoppel in its answer."

Because we conclude that the defendants did, in fact, properly raise collateral estoppel as a defense, and that North Georgia should have been barred by collateral estoppel from litigating the validity of the tax in federal court, we affirm. We express no opinion as to the merits either of the jurisdictional issue—whether TVA distributors are federal instrumentalities exempt from the restrictions imposed by the Tax Injunction Act—or of North Georgia's challenges to the ultimate validity of the Tax.

## DISCUSSION

North Georgia raises three arguments against the City's assertion of collateral estoppel, none of which has merit. First, North Georgia claims that the City failed to raise collateral estoppel as an affirmative defense, and thus that Fed. R.Civ.P. 8(c) should bar the City from raising it now. However, as we have noted, the City filed a motion to amend its answer to include the defense of collateral estoppel, and the district court did indeed grant this motion, which was in fact "unop-

---

**1.** Under the TVA Act, TVA franchises instead make "in lieu of tax" payments to the states in

which they operate. 16 U.S.C. § 831*l* (1988).

posed," *North Georgia v. City of Calhoun, Ga.,* No. 4:91–CV–57–HLM (N.D.Ga. July 1, 1991) (order granting motion to amend answer to include defense of collateral estoppel), although North Georgia's reply brief erroneously states that "the district court never granted City's belated motion to amend its answer to assert such affirmative defenses." Reply Brief at 7.

Although the City did not formally file a new answer, Local Rule 200–2 permits "parties filing or moving to file an amendment to a pleading ... to incorporate relevant provisions of prior pleadings by reference," where "reproduction of the entire pleadings as amended would be unduly burdensome." Thus, it appears that including the new matter in a motion suffices. Furthermore, while it might not have been "unduly burdensome" for the City to reproduce the entire answer as amended in the motion, it does seem unnecessary. North Georgia and the district court were both on notice that the City intended to assert collateral estoppel as a defense. At least where the pleadings are as straightforward as they were in this case, this should suffice. *See* Fed.R.Civ.P. 8(e)(1) ("No technical forms of pleading or motions are required."); 5 Charles A. Wright and Arthur R. Miller *Federal Practice and Procedure* § 1270 at 414 (1990) (requirement of pleading affirmative defenses "serves the purpose of giving the opposing party notice"); *Metromedia Co. v. Fugazy,* 983 F.2d 350, 367 (2d Cir.1992) (first decision filed on day trial began in second suit; attorneys raised issue in opening arguments to jury and at appropriate points during trial; "[a]ppellants had as much notice of the claim of estoppel as could reasonably be required[ ]" and thus "[t]he waiver argument borders on the frivolous."). In their discussion of preclusion, Wright, Miller and Cooper again focus on notice, arguing that the reason that "preclusion [must] be pleaded and proved is that a party entitled to demand preclusion is also entitled to waive

it." 18 Wright, Miller and Cooper § 4405 at 32 (1981).

None of these sources suggests that we should read the pleading requirement so technically as to conclude that the City's effort to amend its answer was inadequate. The interests behind requiring defendants affirmatively to plead the defense of collateral estoppel—providing notice to the plaintiffs and the court, and ensuring that the defendants prefer to assert the bar—were met. The record demonstrates that both North Georgia and the district court were on notice that the City was asserting, not deliberately waiving, the defense of collateral estoppel, and that the basis of this defense was the federal case dismissed in 1988.

Furthermore, the cases in which waiver has been found, both according to our own research and judging by the cases cited in Wright, Miller, and Cooper, involve much clearer evidence of waiver. In the typical waiver case, the defendants did not raise the defense in pleadings, amended pleadings, or arguments before the court. Rather, defendants deemed to have waived a defense of res judicata or collateral estoppel generally raises the issue for the first time quite late in the proceedings—after a trial has been lost, *e.g., Aluminum Prods. Distribs., Inc. v. Aaacon Auto Transp., Inc.,* 549 F.2d 1381, 1384 (10th Cir.1977) (raised in motion for new trial), or on appeal, *e.g., Louisville & N.R. Co. v. M/V Bayou Lacombe,* 597 F.2d 469, 471 n. 1 (5th Cir.1979).[2]

■ Second, North Georgia argues that collateral estoppel should not apply because the first suit was dismissed for lack of federal jurisdiction, rather than on the merits. However, the first suit did adjudicate the jurisdictional issue on the merits. Consequently, while the first suit does not bar North Georgia from challenging the validity of the City's Tax, it does bar relit-

---

2. *Cf. Concordia v. Bendekovic,* 693 F.2d 1073, 1075 (11th Cir.1982) (defense of res judicata first raised on "motion to dismiss" may be treated as a motion for summary judgment on the issue, and motion should not be granted unless

sufficient evidence of the precluding decision is available in the record to justify the application of the defense; defendants made no effort to raise defense in answer, either initially or by amendment).

igation of the jurisdictional question. As the Fifth Circuit stated,

> Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims.

*Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir.1980).[3] *See also Cutler v. Hayes*, 818 F.2d 879, 888 (D.C.Cir.1987) (standing may not be relitigated); Restatement (Second) of Judgments § 20, cmt. b illus. 1 (1982) (valid final judgment for lack of jurisdiction or improper venue does not bar relitigation of the claim, but does bar relitigation of the issues actually litigated) ("Restatement"); *see generally id.* §§ 27–28 (issue preclusion). Wright, Miller and Cooper agree:

> Civil Rule 41(b) provides that a dismissal for lack of jurisdiction or improper venue does not operate as an adjudication upon the merits. This provision means only that the dismissal permits a second action on the same claim that corrects the deficiency found in the first action. The judgment remains effective to preclude relitigation of the precise issue of jurisdiction or venue that led to the initial dismissal.

18 Wright, Miller and Cooper § 4436 at 338–39 (footnotes omitted). *See also Rose v. Town of Harwich*, 778 F.2d 77, 79–80 (1st Cir.1985) (statute of limitations ruling barred right, not merely remedy), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986); *Stewart Sec. Corp. v. Guaranty Trust Co.*, 597 F.2d 240, 241 (10th Cir.1979) (preclusion "has been held to apply to jurisdictional issues as well as to other issues").

North Georgia had the opportunity to appeal the district court's ruling on the jurisdictional issue in 1988. It did not do so. As a result, the tiny City of Calhoun, population 7000, has now faced two suits in federal court over the same tax, in addition to its own suit in state court. While Cal-

houn may have been wrong to tax a TVA distributor, it has been forced into costly and unnecessarily repetitive litigation over the point.

■ Finally, North Georgia argues that collateral estoppel should not apply because intervening decisions have changed the rules for determining whether a TVA distributor is a federal instrumentality. North Georgia is correct that a "change or development in the controlling legal principles" may sometimes prevent the application of collateral estoppel even though an issue has been litigated and decided, "at least for future purposes." *Commissioner v. Sunnen*, 333 U.S. 591, 599, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948); *see also Brock v. Williams Enterprises of Ga., Inc.*, 832 F.2d 567, 574 (11th Cir.1987) (intervening change in legal principles; new disputes involving same issue). The *Sunnen* Court rejected collateral estoppel on the taxability of royalties under a contract for similar disputes involving subsequent tax years, where a series of intervening Supreme Court cases made clear that the first decision, issued in 1935, was erroneous; and rejected collateral estoppel for royalties on later contracts involving different patents because of the "separable" fact situation. The Court reasoned that to rule otherwise would leave the plaintiffs in the position of forever being subject to a different tax rule than those who had never before litigated the issue. *Sunnen*, 333 U.S. at 598–602, 68 S.Ct. at 719–21; *see also Christian v. Jemison*, 303 F.2d 52, 54–55 (5th Cir.), *cert. denied*, 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229 (1962) (renewal of claim protesting segregation permitted after Supreme Court overruled the "separate but equal" doctrine); *Stevenson v. International Paper Co., Mobile, Ala.*, 516 F.2d 103, 108–11 (5th Cir.1975) (employment discrimination defined narrowly so as to avoid complete bar on issues which had been decided in first case in a manner contrary to more recent cases).

More recent Supreme Court cases take a rather strict view of the holding in *Sun-*

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this circuit adopted as precedent all decisions of the former Fifth Circuit rendered before October 1, 1981.

*nen,* arguing that only "major" changes permit the reopening of an issue. *See, e.g., United States v. Stauffer Chemical Co.,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984) (collateral estoppel applicable on issue of whether EPA may use private contractors to inspect chemical plant, where case involved "same issue already litigated against same party in another case involving virtually identical facts," 464 U.S. at 169, 104 S.Ct. at 578, and where there was no intervening change in the applicable law, *id.* at 170, 104 S.Ct. at 578); *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (United States barred from relitigating constitutionality of state tax on public contractors where: (1) there was no intervening change in the law; (2) no new issues were at stake; and (3) no particular circumstances—such as the application of an erroneous rule of law to "unrelated subject matter," 440 U.S. at 162, 99 S.Ct. at 978—warranted an exception to the rules of collateral estoppel); Restatement § 28(b)(2); *cf.* 18 Wright, Miller and Cooper § 4415 at 130 ("Change in the controlling principles of law ordinarily does not warrant denial of claim preclusion."); *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499, 1503–04 (11th Cir. 1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1984) (same principle); *but see Limbach v. Hooven & Allison Co.,* 466 U.S. 353, 104 S.Ct. 1837, 80 L.Ed.2d 356 (1984) (same facts, parties, and issue; new tax year; collateral estoppel not applicable because first case decided on basis of case which subsequently was expressly overruled).

■ *Montana v. United States* interprets *Sunnen* as being premised on "a concern that modifications in 'controlling legal principles,' [*Sunnen* ] [333 U.S.] at 599, [68 S.Ct. at 720] could render a previous determination inconsistent with prevailing doctrine," 440 U.S. at 161, 99 S.Ct. at 977; and indeed, this principle seems to explain not only the *Montana* and *Sunnen* cases, but also *Limbach* and *Stauffer Chemical.* The recent cases in which the Supreme Court has discussed the application of collateral estoppel generally protect defendants from repetitive litigation, un-

less prior law has been essentially overruled, thus making continued application of the principle of the earlier case unjust.

There has been no such dramatic change in the understanding of what constitutes a federal instrumentality for purposes of the Tax Injunction Act. Indeed, North Georgia relies almost entirely on cases decided before 1988 for its argument that TVA distributors are federal instrumentalities. For example, North Georgia claims that a Sixth Circuit case, *United States v. Michigan,* 851 F.2d 803 (6th Cir.1988), so changed the understanding of the federal instrumentality issue as to require us to ignore collateral estoppel. However, the case is entirely consistent with prior cases, comes from a persuasive but not controlling jurisdiction, and was filed two weeks before the district court's 1988 decision in the prior case between North Georgia and Calhoun. Indeed, North Georgia did not once refer to the case in its briefs before the district court.

North Georgia does note that three recent decisions of the Northern District of Alabama concluded that TVA distributors like North Georgia are franchisees of the TVA, exempt from federal taxation under § 13 of the TVA Act. *Cullman Elec. Coop. v. City of Cullman,* No. CV–91–N–665–NE (N.D.Ala. Aug. 30, 1991), *appeal dismissed* (11th Cir. Jan. 15, 1992); *Town of Courtland v. Town of North Courtland,* No. CV–90–L–1346–NE (N.D.Ala. Dec. 28, 1990); *City of Sheffield v. Town of Cherokee,* No. 89–AR–5073–NW (N.D.Ala. Oct. 12, 1989). However, the jurisdictional issue posed by the Tax Injunction Act was not raised in any of these cases. Furthermore, these cases do not demonstrate a change in controlling principles of law. As North Georgia has demonstrated, the courts have long recognized the special partnership between TVA and its distributors. *See, e.g., Alabama Power Co. v. Alabama Elec. Coop., Inc.,* 394 F.2d 672, 677 (5th Cir.) (rural cooperative distributor of TVA power a federal instrumentality for antitrust purposes), *cert. denied,* 393 U.S. 1000, 89 S.Ct. 488, 21 L.Ed.2d 465 (1968); *Greensboro Lumber Co. v. Georgia*

*Power Co.*, 643 F.Supp. 1345, 1359–60 n. 12 (N.D.Ga.1986), *aff'd*, 844 F.2d 1538 (11th Cir.1988) (same; affirmed two months before Judge Murphy's ruling in North Georgia's first federal suit to bar Calhoun's tax). Thus, while the new cases from the Northern District of Alabama support North Georgia's arguments, they do not so change the legal climate as to justify North Georgia's failure to appeal the issue in 1988.

The Restatement and *United States v. Montana* suggest two other ways in which North Georgia could argue that collateral estoppel should not apply to this issue of law, or at least of North Georgia's legal status. As the Restatement puts it, there may be an exception to collateral estoppel where the issue is purely legal and where "the two actions involve claims that are substantially unrelated"; or where "a new determination is warranted ... to avoid inequitable administration of the laws...." Restatement § 28(2).

Neither exception applies here. First, although North Georgia did not raise its current argument against the Tax, based on § 13 of the TVA Act, in the earlier case, the current claim and the earlier challenges are substantially related: North Georgia has simply rephrased its objections to the same tax which it challenged in the first suit. Indeed, had the first judgment been on the merits, North Georgia would face serious res judicata arguments for its failure to raise this basis for its objections then.

By contrast, the typical situation in which the "substantially unrelated claims" exception applies involves entirely separate disputes. *See, e.g.*, Restatement § 28 cmt. b, illus. 2 (defense of sovereign immunity litigated in one tort action does not bar relitigation of issue in case involving subsequent unrelated tort); *and cf. id.* cmt. b (ruling that issuance of corporate notes was not ultra vires is binding in subsequent action involving another of the notes); *id.* cmt. c and illustrations 3–5.

Comment b to Restatement § 28, in describing what constitutes a substantially related claim, indicates that the exception is most compelling "as to claims arising after the first proceeding has been concluded, when other litigants are free to urge that the rule should be rejected." Thus, the exception would be much easier to apply if North Georgia were challenging a similar tax imposed by the City of Dalton. In discussing this section, the Reporter's Note states that

> when the second action involves a different claim from that involved in the first, the question appears to turn in significant part on the closeness of the relationship between the two claims. For example, when they arise out of the same subject matter, ... preclusion as to issues of law serves to prevent unnecessary harassment of the adverse party and undue burden on the courts. But the justification for applying collateral estoppel to such issues is far less when, for example, the second claim arises after the first has been disposed of and springs from an unrelated event or subject matter.

Restatement § 28 (Reporter's Note).

The Reporter's Note goes on to quote *Montana v. United States* for the principle that

> [t]his exception is of particular importance in constitutional adjudication. Unreflected invocation of collateral estoppel against parties with an ongoing interest in constitutional issues could freeze doctrine on areas of the law where responsiveness to changing patterns of conduct or social mores is critical.

*Id., quoting Montana v. United States*, 440 U.S. at 162–63, 99 S.Ct. at 978.

■ The key seems to be, in large measure, linked to concerns articulated in other sections of the commentary: (1) the foreseeability at the time of the first case that the second claim would arise and the issue reappear, especially where the lack of foreseeability might have contributed to a failure to litigate the issue fully, *e.g.*, Restatement § 28 cmt. i; and (2) the sufficiency of the motivation to appeal the first decision or other reason to doubt that there was a fair opportunity to litigate the issue in the first case, *e.g., id.* cmt. j.

In this case, we think North Georgia's claim of a statutory exemption from the Tax was foreseeable at the time of the first litigation, and the amount in controversy at the time was already substantial, so that North Georgia had reason to pursue the matter. The same threshold issue—whether North Georgia is a federal instrumentality exempt from the Tax Injunction Act— was raised, and evaluation of it required consideration of the same factual situation, historical background, statutory language, and case law. *Cf. Montana v. United States*, 440 U.S. at 157–59, 99 S.Ct. at 975– 76, *quoting United States v. Moser*, 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924) ("[T]he 'question expressly and definitely presented in this suit is the same as that definitely and actually litigated and adjudged' adversely to the [plaintiff] in state court. Absent significant changes in controlling facts or legal principles since [the first case], or other special circumstances, the [prior decision] is conclusive here."). In sum, the primary purposes behind permitting this exception to the rules do not apply.

Courts and commentators have sometimes reached to deem actions substantially unrelated in order to avoid preclusion, particularly in cases involving incorrect determinations of tax liability for tax claims in subsequent years. However, the cases in which they do so also involve intervening decisions demonstrating that the first decision was in error, a matter which had not been so apparent at the time. *E.g., Sunnen* (new royalties contract involved separable issues; challenge to taxability for new year on old royalties contract permissible not on separable facts rationale, but because of intervening change in the law); Restatement § 28(b), cmt. c. and illus. 3 (assessment of tax liability for a new tax year permits the reopening of a legal issue settled in prior tax disputes between the parties where intervening case law changed the governing law); *see also Limbach v. Hooven & Allison*, 466 U.S. at 362, 104 S.Ct. at 1843.

Where, however, there has been no intervening change in the law, and virtually no passage of time, the courts and commentators have been more direct. In *Montana v. United States*, for example, the contracts at issue had been altered slightly since the earlier case. Nonetheless, the case stated that only "changes in facts essential to a judgment" would suffice to defeat collateral estoppel. 440 U.S. at 159, 99 S.Ct. at 976. Because the changes in the contracts would not change the outcome, collateral estoppel applied despite the variations. Furthermore, the *Montana* case demonstrates that decisions involving tax liability are not necessarily deprived of preclusive effect in subsequent disputes. In that case, the United States sought to enjoin a Montana state tax on public contractors in 1977, after two state court tax refund actions, in 1973 and 1975, had determined that the tax was valid (the second relying on the preclusive effect of the first). 440 U.S. at 151, 99 S.Ct. at 972; *see United States v. Montana*, 437 F.Supp. 354 (D.Mont.1977) (three-judge court), *rev'd*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). *See also United States v. Stauffer Chemical Co.*, 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (though involving an issue of EPA rules rather than tax liability).

This case more closely resembles *Montana v. United States* than *Commissioner v. Sunnen*. There has been no intervening change in the law. The facts essential to the judgment below include no new information about how the tax, or North Georgia, operated in subsequent years. The "new controlling facts" rule suggested by *Montana* does not go to the question of whether the claims are substantially related, but whether the determination of the first action has settled the same issues as those raised in the second. This rule, which does not help North Georgia since the controlling facts have not changed at all, may permit consideration of identical tax questions in subsequent years, because consideration of the "new facts" describing the taxpayer's liability for the new year is necessary to determine application of the tax law to these facts. That question we need not face here.

For similar reasons, the exception "to avoid inequitable administration of the

laws," Restatement § 28(2)(b), should not apply here, as it did not in *United States v. Montana.* North Georgia is not being placed in a position of forever paying taxes other TVA distributors do not pay—a situation which *Sunnen* might well protect against even if a state court were to rule against North Georgia on the merits—but is being placed in a position of raising the arguments for its tax exemption in this particular instance before a state court. Just as we should be concerned about inequitable administration of the tax laws, we should be concerned about inequitable administration of the law of collateral estoppel against entities like Calhoun which have followed the rules in their efforts to determine the validity of their taxation schemes. The *Montana* case demonstrates that just because North Georgia is challenging a tax does not mean that the law of collateral estoppel disappears. Rather, it means that the effect of collateral estoppel on erroneous determinations of tax liability should be limited; this is true particularly when the passage of time diminishes the injustice of forcing the opposing party to relitigate the issue, or when the opposing party seeks to impose collateral estoppel to establish liability for future years on the basis of a plainly erroneous determination of tax liability. Finally, the Restatement suggests that relitigation may be permitted where

> There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action....

Restatement § 28(5). One of the comments to this section indicates that while

> [t]here are instances in which the interests supporting [relitigation] outweigh the resulting burden on the other party and on the courts[,] ... such instances must be the rare exception, and litigation to establish an exception in a particular case should not be encouraged. Thus it is important to admit an exception only when the need for a redetermination of the issue is a compelling one.

*Id.* at cmt. g. The reporter's note to § 28 suggests that the exception is again pri-

marily aimed at preventing erroneous decisions from defeating substantial rights, and cites *Christian v. Jemison,* 303 F.2d 52 (5th Cir.1962), *cert. denied,* 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229 (1962) (collateral estoppel did not bar relitigation of discrimination claim after Supreme Court overturned "separate but equal" doctrine) as an example of an appropriate occasion for invocation of this exception. The other cases cited in this section of the reporter's note also involve intervening changes in the controlling law, rather than mere error, as is alleged here; furthermore, they involve substantial substantive rights—to equal employment or to financial remedies—rather than questions of the appropriate forum in which those rights may be contested. *Griffin v. State Bd. of Educ.,* 296 F.Supp. 1178, 1182 (E.D.Va. 1969) (tuition credits); *White v. Adler,* 289 N.Y. 34, 43, 43 N.E.2d 798, 801–02 (1942), *rearg. denied,* 289 N.Y. 647, 44 N.E.2d 621 (1942) (liability of stockholders of bank which failed in 1930; failure of state enforcement officer to anticipate 1935 case which made clear the possibility of enforcement should not bar public from holding these stockholders, like all others similarly situated, liable for bank debts).

Comment h to Restatement § 28 concerns situations in which solicitude for the interests of third parties not before the court in the first action may outweigh the interests in preclusion. The comment cites, as examples of situations where the doctrine could bind nonparties, government enforcement actions designed to protect members of the public; and class actions, in which class members may be unaware of the potential that an issue may be litigated in the class action which could reoccur in another, unrelated claim. Again, it is the interests of those parties in a proper adjudication of their claims on the merits that seems to motivate the exception. *Cf. White v. Adler.*

There seems no clear, convincing and compelling reason, to use the terms of Restatement § 28(5) and comment g, to conclude that requiring North Georgia to raise its objections to the Tax in the state court system will adversely affect the determina-

tion of the public interest or the rights of persons who are not parties to this action, such as North Georgia's customers. We have no reason to believe that the Georgia courts are incapable of fairly addressing the merits of North Georgia's claims. Without this concern, the only public interests at stake are those behind the federal instrumentality exception to the Tax Injunction Act and those behind the doctrine of collateral estoppel. There are, of course, policies behind every legal issue which a litigant faced with a collateral estoppel argument wishes to reopen. But that, without more, does not suffice to defeat preclusion.

We might be more sympathetic if a ruling on the jurisdictional issue were to bar North Georgia from protesting the validity of the tax. However, as we have said, North Georgia still has the opportunity to present its arguments before the Georgia state courts. Furthermore, collateral estoppel would not necessarily bar North Georgia from raising the federal instrumentality exception to the Tax Injunction Act in future disputes over any tax levied by the City of Calhoun, much less by any other municipality. The consequences of our ruling are thus rather limited.

The doctrine of collateral estoppel fulfills an important policy of permitting defendants repose on issues already litigated. We note that North Georgia is the seventh largest distributor of TVA power, and is represented on this appeal by attorneys who have represented the TVA for decades. The City of Calhoun is a small town with far fewer resources. Although North Georgia may well be right that it is a federal instrumentality, it had the opportunity to raise this argument in 1988. Because it did not, the City filed suit in state court, and has now been obligated to defend itself once again in federal court. This is precisely the sort of problem which the collateral estoppel doctrine was designed to prevent.

AFFIRMED.