[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 94-6400
_____
D. C. Docket Nos. CV93-M-69-S
CV93-M-196-S

JEFFERSON COUNTY, a political subdivision of
the State of Alabama,

Plaintiff-Appellant,

versus

WILLIAM M. ACKER, JR.,

Defendant-Appellee.


---------------------------------------------


JEFFERSON COUNTY, a political subdivision of
the State of Alabama,

Plaintiff-Appellant,

versus

U. W. CLEMON,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(March 27, 1998)**

Before HATCHETT, Chief Judge, TJOFLAT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit Judges,[*] and HENDERSON and KRAVITCH[**], Senior Circuit Judges.

_____

[*]Judges Frank M. Hull and Stanley Marcus became members of the court after this case was argued and taken under submission. They elected not to participate in this decision.

[**]Senior U. S. Circuit Judges Henderson and Kravitch elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

COX, Circuit Judge:

The issue presented by this case is whether Jefferson County, Alabama may require Article III judges to pay a tax for the privilege of engaging in their occupation within the county. In our earlier *en banc* opinion[1] we affirmed the district court's grant of summary judgment for the defendants, holding that the tax violates the Supremacy Clause of the Constitution. The Supreme Court vacated our judgment and remanded the case for reconsideration in light of its recent decision in *Arkansas v. Farm Credit Services*, ___ U.S. ___, 117 S. Ct. 1776 (1997), directing us to consider the effect of the Tax Injunction Act, 28 U.S.C. § 1341, on federal jurisdiction in this case. Upon reconsideration we hold that the district court had jurisdiction and reinstate our *en banc* opinion on the merits.

## I. BACKGROUND[2]

Jefferson County Ordinance No. 1120 imposes a tax on persons not otherwise required to pay a license or privilege tax to the State of Alabama or Jefferson County. It states in pertinent part:

> It shall be unlawful for any person to engage in or follow any vocation, [etc.], within the County . . . without paying license fees to the County for the privilege of engaging in or following such vocation, [etc.], which license fees shall be measured by one-half percent (1/2%) of the gross receipts of each such person.

---

[1]*Jefferson County v. Acker*, 92 F.3d 1561 (11th Cir. 1996) (en banc).

[2]As our consideration of the jurisdictional issue primarily concerns issues of law, we have summarized the facts briefly here; a more complete account appears in our earlier *en banc* opinion. *See Acker*, 92 F.3d at 1563-66.

Jefferson County, Ala., Ordinance No. 1120, § 2 (Sept. 29, 1987). Defendants William M. Acker, Jr. and U.W. Clemon are United States District Judges for the Northern District of Alabama who maintain their principal offices in Birmingham, the Jefferson County seat. They refused to pay the privilege tax, contending that the tax as applied to federal judges violates the United States Constitution. Jefferson County subsequently sued them in state court to recover delinquent privilege taxes under the ordinance. The defendants removed the cases to federal court pursuant to 28 U.S.C. § 1442(a)(3); Jefferson County moved to remand, but the motion was denied. The cases subsequently were consolidated.

The district court granted summary judgment for the defendants, holding that the legal incidence of the tax fell not upon the judges but upon the federal judicial function itself, thus constituting a direct tax on the United States in violation of the intergovernmental tax immunity doctrine. *See Jefferson County v. Acker*, 850 F. Supp. 1536, 1545-46 (N.D. Ala. 1994) (subsequent history omitted). The district court also held that as applied to federal judges the ordinance violated the Compensation Clause of Article III. *See id.* at 1547-58. Jefferson County appealed, and a panel of this court reversed. *See Jefferson County v. Acker*, 61 F.3d 848 (11th Cir. 1995) (subsequent history omitted).

On rehearing *en banc*, this court affirmed the district court's ruling with respect to the intergovernmental tax immunity doctrine, stating that any holding with respect

2

to the Compensation Clause was unnecessary. *See Jefferson County v. Acker*, 92 F.3d 1561, 1576 (11th Cir. 1996) (subsequent history omitted). With respect to the immunity issue, we concluded that although the privilege tax is *measured* by the income of the taxed individual, the taxable *event* is the performance of federal judicial duties in Jefferson County. *See id.* at 1572. As such, the privilege tax represents a fee that a federal judge must pay to lawfully perform his or her duties, and therefore a direct tax on the United States. *See id.* We further determined that Congress did not consent to such taxation; as the states may not levy a direct tax on the United States without Congress' consent, we held that the tax is unconstitutional as applied to the judges. *See id.* at 1573-76.

Jefferson County then filed in the Supreme Court a petition for a writ of certiorari. The Solicitor General submitted an *amicus* brief on behalf of Jefferson County, in which it argued that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, barred federal jurisdiction over the case. In a brief memorandum opinion, the Supreme Court vacated our *en banc* judgment and remanded the case for consideration of the TIA's effect on federal jurisdiction in light of the recent decision in *Arkansas v. Farm Credit Services*, ___ U.S. ___, 117 S. Ct. 1776 (1997). Jefferson County raised the jurisdictional issue in the district court in its unsuccessful motion to remand, but on appeal did not. Therefore, this is the first time that the issue has

3

been raised in this court. We review jurisdictional rulings and other questions of law *de novo*. *See, e.g.*, *McKusick v. City of Melbourne*, 96 F.3d 478, 482 (11th Cir. 1996).

## II. DISCUSSION

### A. *Does the Federal Officer Removal Statute Apply?*

The defendants removed this case to federal court under 28 U.S.C. § 1442(a)(3), the section of the federal officer removal statute applicable to federal court officers. Jefferson County contends that this case does not fall within the ambit of the statute, and that removal of the case to federal court was therefore improper.[3] As no other circumstances exist that would support federal court jurisdiction, improper removal would mandate dismissal. Thus, our first inquiry is to determine whether § 1442 applies.

Unlike the general removal statute (28 U.S.C. § 1441), § 1442 is a jurisdictional grant that empowers federal courts to hear cases involving federal officers where jurisdiction otherwise would not exist. *See Loftin v. Rush*, 767 F.2d 800, 804 (11th Cir. 1985). It reads in pertinent part:

> (a)    A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the

---

[3]In its brief Jefferson County characterizes this issue as determining whether § 1442 "restores" any federal jurisdiction otherwise denied by the TIA. *See* Supplemental *En Banc* Brief for Appellant at 17. However, as Article III courts have no jurisdiction except by statutory grant, *see, e.g.*, *Baggett v. First Nat'l Bank*, 117 F.3d 1342, 1345 (11th Cir. 1997), the proper inquiry for us is to determine first whether § 1442 provided the district court with any jurisdiction for the TIA to deny.

4

district court of the United States for the district and division embracing the place wherein it is pending:

. . . .

(3) Any officer of the courts of the United States, for any Act under color of office or in the performance of his duties;

28 U.S.C.A. § 1442(a)(3) (1994 & Supp. 1997). The judges are "officer[s] of the courts of the United States," but removal of an action under this section requires the satisfaction of two additional requirements: (1) the defendant must establish a "causal connection between what the officer has done under asserted official authority" and the action against him, *Maryland v. Soper*, 270 U.S. 9, 33, 46 S. Ct. 185, 190 (1926); and (2) the defendant must advance a "colorable defense arising out of [his] duty to enforce federal law," *Mesa v. California*, 489 U.S. 121, 133, 109 S. Ct. 959, 966-67 (1989); *accord Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427-28 (11th Cir. 1996). Thus, under the statute federal officers facing state law claims against them arising out of their duties may remove their cases to federal court if they advance a colorable federal defense. *See Arizona v. Manypenny*, 451 U.S. 232, 241-42, 101 S. Ct. 1657, 1664 (1981). Jefferson County argues that the judges have not satisfied either requirement.

We agree with the district court that the plain language of § 1442 is sufficiently broad to encompass this case. The Jefferson County ordinance at issue makes it "unlawful for any person to engage in . . . any . . . occupation . . . without paying

5

license fees to the County." Jefferson County, Ala., Ordinance No. 1120, § 2 (Sept. 29, 1987). Under official authority, Judges Acker and Clemon have "engaged in the occupation" of being United States District Judges "without paying license fees to the County," and as a result the county has sued them. There is a direct causal connection between the judges' acts under official authority and the action against them.

As for the second requirement, Jefferson County in effect urges us to reconsider our decision on the merits, contending that the judges do not have immunity from the tax and therefore have not advanced a "colorable" defense for their refusal to pay. However, § 1442 does not require the resolution of, or even a detailed inquiry into, the merits of the federal defense advanced. One of the primary purposes of § 1442 is to allow officials to have the validity of their federal defenses determined in federal court. *See Willingham v. Morgan,* 395 U.S. 402, 89 S. Ct. 1813 (1969). For removal to be proper under § 1442, "[the federal defense alleged] need only be plausible; its ultimate validity is not to be determined at the time of removal." *Magnin,* 91 F.3d at 1427. At the time of removal the judges' immunity defense was at least "plausible," a conclusion supported by both the district court's grant of summary judgment for the judges and this court's subsequent affirmance. We hold that the federal officer removal statute is sufficiently broad to permit removal of this case.

B.     *Does the Tax Injunction Act Preclude Federal Jurisdiction?*

The next issue to be resolved is the effect, if any, of the Tax Injunction Act (TIA) on federal jurisdiction in this case. Before the passage of the TIA, equity practice directed federal courts to abstain in cases involving state taxation out of concern for undue federal interference with the States' internal economies. *See, e.g., Matthews v. Rodgers*, 284 U.S. 521, 525, 52 S. Ct. 217, 219 (1932). The TIA represents a congressional recognition and sanction of this prior practice. *See, e.g., Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 470, 96 S. Ct. 1634, 1640 (1976). It states:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341 (1994). Congress' purpose in enacting the TIA was "to deny jurisdiction to United States district courts to . . . restrain the assessment, levy, or collection" of state taxes. H.R. REP. NO. 75-1503 (1937) (House Judiciary Committee report recommending passage of TIA). As such, the TIA is not a guide to abstention, but a "jurisdictional rule," *Farm Credit Servs.*, ___ U.S. at ___, 117 S. Ct. at 1779 (1997), stripping federal courts of the power to grant relief, *see United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 326 (5th Cir. 1979) ("[T]he history of section 1341, from its precursor federal equity practice to its most current judicial construction, evidences that it is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems.").

7

1.  *Does the Language of the TIA Cover This Case?*

The TIA only applies to situations involving a "tax under State law" and in which the state does not provide a "plain, speedy and efficient remedy." 28 U.S.C. § 1341 (1994). Neither party contends that the tax at issue is not a "tax under state law" within the meaning of the TIA, so we will assume *arguendo* that it is, an assumption consistent with the law in this circuit.[4] As for the existence of a "plain, speedy and efficient remedy" in the Alabama courts, Jefferson County argues that the Alabama Declaratory Judgment Act, ALA. CODE § 6-6-220 (1997), and the judges' ability to assert their constitutional objections to the tax as affirmative defenses in their answer in a state court suit provide the necessary remedies. *See* Supplemental *En Banc* Brief for Appellant at 15-16. The defendants do not contest the issue,[5] but in any event we agree with Jefferson County's argument on this point. *See Richards v. Jefferson County*, 789 F. Supp. 369, 371 (N.D. Ala.) (finding Alabama's remedies

---

[4]Under our case law, the ordinance would seem to levy a "tax" rather than a regulatory "fee." *See Miami Herald Publishing Co. v. City of Hallandale*, 734 F.2d 666, 672 (holding that effect of similar "license fee" regulation was to raise general revenue, thus rendering it a "tax" for purposes of the TIA), *clarified*, 742 F.2d 590 (11th Cir. 1984). While no court has explicitly held that local taxes constitute taxes "under State law," numerous decisions have applied the TIA to bar federal jurisdiction in cases involving local taxes. *See, e.g.*, *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 101 S. Ct. 1221 (1981); *North Georgia Elec. Membership Corp. v. City of Calhoun*, 989 F.2d 429 (11th Cir. 1993), *aff'd*, 989 F.2d 429 (11th Cir. 1993); *United States v. Broward County*, 901 F.2d 1005 (11th Cir. 1990); *Williams v. City of Dothan*, 818 F.2d 755, *modified,* 828 F.2d 13 (11th Cir. 1987).

[5]Most of the defendants' substantive arguments are contained in the brief filed by United States District Judges Hancock, Propst, Nelson and Blackburn as *amici curiae*, which the defendants adopt in its entirety. *See* Supplemental *En Banc* Brief for Appellees at 8.

adequate for TIA purposes in suit concerning same ordinance), *aff'd*, 938 F.2d 237

(11th Cir. 1992).  We hold that the case at bar falls within the scope of the TIA.

### 2.    *Does the TIA Bar Federal Jurisdiction?*

Our holding that the TIA applies does not necessarily foreclose federal

jurisdiction, as there are two exceptions to the literal proscriptions of the statute:  First,

as the TIA is a legislative enactment, Congress is of course free to create exceptions

to the act in other legislation.  Federal courts have found both express and implied

congressional intent to create exceptions to the TIA in other jurisdictional statutes.

*See City and County of San Francisco v. Assessment Appeals Bd.*, 122 F.3d 1274,

1276 (9th Cir. 1997); *Carrollton-Farmers Branch Indep. Sch. Dist. v. Johnson &

Cravens, 13911, Inc.*, 858 F.2d 1010, 1015 (5th Cir. 1988), *vacated on other grounds*,

889 F.2d 571 (5th Cir. 1989); *Southern Ry. Co. v. State Bd. of Equalization*, 715 F.2d

522, 529-30 (11th Cir. 1983).  Second, the statute "does not constrain the power of

federal courts if the United States sues to protect itself or its instrumentalities from

state taxation," *Farm Credit Servs.*, ___ U.S. at ___, 117 S. Ct. at 1778, even if the

case falls within the literal language of the statute.  This judicially created "federal

instrumentality" exception is based on the understanding that the sovereign is not

bound by its own legislative restrictions unless it expressly intends to bind itself.  *See

id.* at ___, 117 S. Ct. at 1781.  Thus, both exceptions involve a determination of

10

congressional intent to allow federal jurisdiction notwithstanding the TIA's proscriptions. We examine them in turn.

### a. *Does § 1442 Override the TIA?*

The defendants contend that § 1442, without more and in all cases, overrides the TIA, giving them an absolute right to remove to federal court. We reject this contention. As a statute that *strips* federal jurisdiction, the TIA assumes a pre-existing statutory grant; without such a grant, there would be no jurisdiction for the TIA to strip away. The Supreme Court has spoken directly on this point:

> Since presumably all actions properly within the jurisdiction of the United States district courts are authorized by one or another of the statutes conferring jurisdiction upon those courts, the mere fact that a jurisdictional statute . . . speaks in general terms of "all" enumerated civil actions does not itself signify that [an entity is] exempted from the provisions of [the TIA].

*Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 472, 96 S. Ct. 1634, 1641 (1976);[6] *see also Bank of New England Old Colony v. Clark*, 986 F.2d 600, 603, 604 (1st Cir. 1993) ("For the FDIC to prove that the [FIRREA] removal statute trumps the [TIA], it must show that Congress clearly and manifestly intended the statute to be an exception . . . . The mere fact that [the removal statute] states that the FDIC may remove 'all' actions does not in itself demonstrate the clear and manifest intent of

---

[6]Although it relied on the principle of comity underlying the TIA rather than the act itself, the Court came up with the same result with respect to tax refund actions under 42 U.S.C. § 1983. *See Fair Assessment in Real Estate Assoc. v. McNary*, 454 U.S. 100, 116, 102 S. Ct. 177, 186 (1981).

Congress to trump the [TIA]. . . . Such language, rather, is consistent with a general grant of jurisdiction which did not take into account the provisions of the Act." (citations omitted)); *Ashton v. Cory*, 780 F.2d 816, 822 (9th Cir. 1986) (ERISA § 502 (28 U.S.C. § 1132(e)(1)) is not exception to TIA, because "[i]n the absence of . . . express congressional action, we cannot infer that Congress intended impliedly to take the drastic step of carving out an exception to the Tax Injunction Act"). In light of the reasoning of the Supreme Court and of other federal courts, we reject the defendants' argument and hold that § 1442 standing alone is not a universal exception to the TIA.

      b.      *Do the Defendants Come Within The "Federal Instrumentality" Exception to the TIA?*

We have found no direct evidence of congressional intent to allow the defendants to bypass the TIA in the language of the statutes at issue. However, in *Department of Employment v. United States*, 385 U.S. 355, 358, 87 S. Ct. 464, 467 (1966), the Supreme Court set forth a judicial exception to the TIA based on implied congressional intent, holding that "[the TIA] does not act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exactions." The Court's holding was based on the understanding that the government is not bound by its own legislative restrictions unless it expressly intends to bind itself. *See Farm Credit Servs.*, ___ U.S. at ___, 117 S. Ct. at 1781; *see also Dollar Sav. Bank v. United States*, 86 U.S. (19 Wall.) 227, 239 (1873). In other words, the Court assumed that in enacting the TIA Congress did not intend to prevent

12

the United States from asserting its own tax immunity in federal court. Thus the judicial exception, also known as the "federal instrumentality exception," allows the federal government to contest state taxation of its instrumentalities in federal court notwithstanding the restrictions of the TIA. *See, e.g., United States v. Broward County*, 901 F.2d 1005, 1008 (11th Cir. 1990); *Dawson v. Childs*, 665 F.2d 705, 710 (5th Cir. Unit A Oct. 1980); *United States v. Lewisburg Sch. Dist.*, 539 F.2d 301, 310 (3d Cir. 1976).

### 1. *Arkansas v. Farm Credit Services*

Read literally, however, the exception articulated in *Department of Employment* only applies to "suits *by the United States* to protect itself and its instrumentalities" from state taxation. 355 U.S. at 358, 87 S. Ct. at 467 (emphasis added). The few circuit court cases addressing the issue are split on whether federal instrumentalities may contest state taxes in federal court without the government as a co-party. *Compare, e.g., FDIC v. City of New Iberia*, 921 F.2d 610, 613 (5th Cir. 1991) (FDIC is federal instrumentality that may contest state tax in federal court without United States as co-plaintiff) *with, e.g., Housing Auth. of Seattle v. State of Washington, Dep't of Revenue*, 629 F.2d 1307, 1311 (9th Cir. 1980) (joinder with the United States as co-plaintiff necessary for instrumentality to avoid TIA). This was the issue the Supreme Court set out to address in *Farm Credit Services*.

13

*Farm Credit Services* concerned Production Credit Associations (PCAs), federally chartered corporations whose organic statute explicitly designates them as "instrumentalities" of the United States. *See* 12 U.S.C. §§ 2071(b)(7), 2077 (1994). PCAs are exempt by federal statute from state taxes on their "notes, debentures, and other obligations." *See* 12 U.S.C. § 2077 (1994). In *Farm Credit Services*, four PCAs sued the state of Arkansas in federal district court, claiming immunity not only from the taxes explicitly designated in § 2077, but from Arkansas sales and income taxes as well. The government did not participate in the suit, and the Solicitor General submitted an *amicus* brief opposing jurisdiction. Thus, the case turned on whether the PCAs could utilize the *Department of Employment* exception without the joinder of the government as a co-party. The Supreme Court held that the TIA barred the PCAs from contesting the tax in federal court unless the United States participated on their behalf. *Farm Credit* Servs., ___ U.S. at ____, 117 S. Ct. at 1780.

The Court has directed us to consider the jurisdictional issue in this case in light of *Farm Credit Services*. While the *Farm Credit Services* Court held that PCAs could not sue in federal court without the United States as co-party, it did not extend that holding to other instrumentalities; the result in *Farm Credit Services* seems to hold open the "federal instrumentality" exception for entities litigating on their own. Jefferson County's brief characterizes *Farm Credit Services* as holding that "federal courts [have] no jurisdiction over a dispute involving the collection of a state tax from

14

a federal instrumentality *unless the United States* [is] *a co-party*." Supplemental *En Banc* Brief for Appellant at 16. This is a clear misreading of the opinion, which states only that "instrumentality status does not in and of itself entitle an entity to the same exemption the United States has under the Tax Injunction Act." *Farm Credit Servs.*, ___ U.S. at ___, 117 S. Ct. at 1782; *see also City and County of San Francisco v. Assessment Appeals Bd.*, 122 F.3d 1274, 1277 (9th Cir. 1997) (interpreting *Farm Credit Services* as allowing some instrumentalities to bypass the TIA without the United States' participation). In fact, the *Farm Credit Services* Court reviewed different approaches used by the circuits and noted that a rule barring all federal instrumentalities from federal court unless the United States participates is the "most restrictive approach" of those used. *Farm Credit Servs.*, ___ U.S. at ___, 117 S. Ct. at 1781.

With respect to the PCAs, the Court held that "[u]nder any of the tests . . . described, PCA's would not be exempt from [the TIA]." *Id.* at ___, 117 S. Ct. at 1782. The factor that seems to have weighed most heavily in the Court's decision is the PCAs' quasi-private status:

> The PCA's' business is making commercial loans, and all their stock is owned by private entities. Their interests are not coterminous with those of the Government any more than most commercial interests. Despite their formal . . . designation as instrumentalities of the United States, . . . PCA's do not have or exercise power analogous to that of . . . any of the departments or regulatory agencies of the United States.

15

*Id.* Article III judges are completely dissimilar from PCAs. *Farm Credit Services* therefore informs our analysis, but does not answer the question before us with regard to Judges Acker and Clemon. However, the opinion cites with seeming approval two cases which are helpful to our inquiry: *Moe v. Confederated Salish & Kootenai Tribes*,[7] *see id.* at ___, 117 S. Ct. at 1781 ("*Moe* is instructive here."), and *Federal Reserve Bank v. Commissioner of Corps. and Taxation*,[8] *see id.* at ___, 117 S. Ct. at 1782. We now examine those cases.

2.    *Moe v. Confederated Salish & Kootenai Tribes*

In *Moe*, the Court affirmed a district court ruling that extended the United States' *Department of Employment* exception to Native American tribes suing in federal court. The district court allowed the tribes to bypass the TIA under the exception and enjoin the collection of state taxes from cigarette sales. It based this ruling on two alternative grounds: (1) that the United States' significant interest in the tribes qualified them for the exception, and a symbolic joinder of the United States would serve no purpose; and (2) that a separate jurisdictional statute, 28 U.S.C. § 1362,[9] which gives Native Americans special access to federal court, embodied a

---

[7]425 U.S. 463, 96 S. Ct. 1634 (1976).

[8]499 F.2d 60 (1st Cir. 1974).

[9]The statute reads:

> The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

congressional purpose to allow the tribes to sue in federal court as if they were the United States. *See Confederated Salish & Kootenai Tribes v. Moe*, 392 F. Supp. 1297, 1303-04 (D. Mont. 1974).

The Supreme Court affirmed the ruling, but found each of the district court's grounds insufficient standing alone to justify allowing the tribes to bypass the TIA. The Court first stated that although the tribes' asserted interests coincided with those of the federal government, perhaps qualifying them for federal "instrumentality" status, this congruence of interests was insufficient by itself to exempt the tribes from the TIA. *See Moe*, 425 U.S. at 471-72, 96 S. Ct. at 1640-41. Likewise, the Court refused to interpret § 1362 as a blanket exception to the TIA. *See id.* at 472, 96 S. Ct. at 1641. ("[T]he mere fact that a jurisdictional statute such as § 1362 speaks in general terms of 'all' enumerated civil actions does not itself signify that Indian tribes are exempted from the provisions of [the TIA].").

Instead, the Court affirmed the district court on a hybrid of the two grounds. The Court assumed that the United States could have sued on behalf of the tribes by itself or as co-plaintiff, because of the congruence of the tribes' interests and those of the government. The Court also found that § 1362 evidenced a congressional intent to allow Native American tribes, in some circumstances, to participate in federal court

---

28 U.S.C. § 1362 (1994).

17

as if they were the United States suing as the tribes' trustee. The Court held that under the circumstances of the case the tribes could use § 1362 to stand in the place of the United States and enjoy the benefit of the *Department of Employment* exception. *See id.* at 474-75, 96 S. Ct. 1641-42.

### 3. *Federal Reserve Bank v. Commissioner of Corps. & Taxation*

*Federal Reserve Bank* involved a declaratory judgment action brought in federal court by the Federal Reserve Bank of Boston, which sought to avoid Massachusetts sales tax on materials used to construct its new building. The First Circuit's decision allowed the bank to contest the tax in federal court without the United States as co-plaintiff. The court began by accepting the bank's status as a federal instrumentality, framing the case in terms of what it deemed the proper issue:

> [T]he present case does not turn on whether federal reserve banks are instrumentalities. Plainly they are. The question is whether there is any reason to treat [the bank] differently from instrumentalities [not eligible for an exemption from the TIA] like savings and loan associations. . . . Is [the bank] privileged, like the United States itself, to maintain this proceeding?

*Federal Reserve Bank,* 499 F.2d at 62. The First Circuit noted that in answering the question of whether an entity could use the instrumentality exception without the participation of the government, "we must accept the absence of any bright line to facilitate analysis; each instrumentality must be examined in light of its governmental role and the wishes of Congress as expressed in relevant legislation." *Id.* at 64.

The court decided that the bank was a federal instrumentality eligible for the *Department of Employment* exception, citing several factors in favor of its conclusion. First, the court noted that the bank performed significant governmental functions, serving primarily as a "fiscal arm[] of the federal government," and thus a state tax affecting the bank would "call[] directly into question the sovereign interest of the United States." *Id.* at 62, 63. Second, the bank had the benefit of a special jurisdictional statute giving it access to the federal courts; the court stated that "[s]uch a clearly expressed strong federal interest in litigating all reserve bank business in the federal courts further tips the scale away from the general hostility to interfering with [state taxation]." *Id.* at 63. Third, the bank occupied a special place in the governmental structure "outside the executive chain of command," *id.*, which militated against forcing the bank to acquire the Attorney General's approval before going to court. Thus, the court concluded, the bank could "proceed in a federal forum under the same exception . . . available to the United States were it a named plaintiff." *Id.* at 64.

### 4. *Are the Judges Eligible for the Exception?*

We conclude that the defendants' situation more closely resembles that of the Native American tribes in *Moe* and the bank in *Federal Reserve Bank* than the PCAs in *Farm Credit Services.* The *Farm Credit Services* Court was concerned that PCAs are basically commercial lenders, whose interests "are not coterminous with those of

19

the Government any more than most commercial interests." *Farm Credit Servs.*, ___

U.S. at ___, 117 S. Ct. at 1782. In contrast, the *Federal Reserve Bank* court concluded

that

> [w]hile savings and loan associations may . . . be analogized to private
> corporations, federal reserve banks, . . . are plainly and predominantly
> fiscal arms of the federal government. Their interests seem
> indistinguishable from those of the sovereign . . . .

*Federal Reserve Bank*, 499 F.2d at 62. Likewise, the *Moe* Court assumed that the

Native American tribes at issue in that case had interests closely aligned with those

of the United States, at least as far as taxation was concerned. *See Moe*, 425 U.S. at

471, 473-74, 96 U.S. at 1640, 1641.

As one of the three branches of the federal government, the federal judiciary's

interests are congruent with, if not identical to, those of the United States. We held

in our prior *en banc* opinion that "[w]hen performing federal judicial duties, a federal

judge performs the functions of government itself, and cannot realistically be viewed

as a separate entity from the federal court." *Acker*, 92 F.3d at 1572 (internal quotation

and citation omitted). In interpreting the statute regarding the duties of the Attorney

General, the Supreme Court rejected the argument that cases "in which the United

States is interested" are solely those cases in which the interests of the executive

branch are at stake. *United States v. Providence Journal Co.*, 485 U.S. 693, 701, 108

S. Ct. 1507 (1988). The Court stated: "It seems to be elementary . . . that the three

branches are but co-ordinate parts of one government. . . . [W]e shall not assume that

20

[Congress] intended . . . to exclude the judicial branch when it referred to the 'interest of the United States.'" *Id.* (internal quotation and citation omitted).

Another factor present in this case as well as in *Moe* and *Federal Reserve Bank*, but notably absent from *Farm Credit Services*, is the existence of a special jurisdictional statute.[10]  Both *Moe* and *Federal Reserve Bank* concluded that special jurisdictional statutes, without more, were insufficient to override the TIA, but were evidence of congressional intent that the entities in question be allowed to stand in the place of the United States in federal court.  While we have refused to read § 1442 as a blanket exemption to the TIA, we likewise find in the statute a congressional intent that federal officers' access to the federal courts "[will] be at least in some respects as broad as that of the United States."  *Moe*, 425 U.S. at 473, 96 S. Ct. at 1641.  As Congress recently noted, "[section 1442] fulfills Congress' intent that questions concerning the exercise of Federal authority, the scope of Federal immunity and Federal-State conflicts be adjudicated in Federal court."  S. REP. NO. 104-366 at 31 (1996), *reprinted in* 1996 U.S.C.C.A.N. 4202, 4210.  The United States can only act

---

[10]In interpreting *Farm Credit Services*, the Ninth Circuit has concluded that such a statute is a prerequisite for an entity wishing to utilize the federal instrumentality exception without the United States as a co-party.  *See City & County of San Francisco v. Assessment Appeals Bd.*, 122 F.3d 1274, 1277 (9th Cir. 1997) ("A federal instrumentality does not have to join the United States as a party, however, when a 'second federal statute grant[ing] sweeping federal court jurisdiction' exists.") (quoting *Farm Credit Servs.*, ___ U.S. at ___, 117 S. Ct. at 1781).  Other federal court decisions predating *Farm Credit Services* have held similarly.  *See MRT Exploration Co. v. McNamara*, 731 F.2d 260, 265 (5th Cir. 1984); *North Georgia Elec. Membership Corp. v. Calhoun*, 820 F. Supp. 1403, 1407-08 (N.D. Ga. 1992), *aff'd*, 989 F.2d 429 (11th Cir. 1993); *National Carriers' Conf. Comm. v. Heffernan*, 440 F. Supp. 1280, 1283 (D. Conn. 1977).

through its agents and officers; when those officers remove a case to federal court under § 1442 they are, in effect, appearing in court for the United States. The case before us directly implicates the congressional concerns addressed by § 1442, and "[s]uch a clearly expressed strong federal interest in litigating [such cases] in the federal courts further tips the scale away from the general hostility to interfering with a state taxing scheme." *Federal Reserve Bank*, 499 F.2d at 63.

Finally, important structural concerns militate against us requiring the defendants to acquire the support of the United States in this case. Much like the federal reserve banks, the federal judiciary operates "outside of the executive chain of command," *Id*. There are good reasons not to insist that the federal judiciary acquire the support of the Attorney General in order to assert Supremacy Clause immunity, not the least of which is the ever-present possibility of conflict between the executive and judicial branches. The federal instrumentality exception represents a judicial finding of Congress' implied intent in enacting the TIA; refusing to apply the exception in this case would be equivalent to a finding that Congress intended to put the judicial branch at the mercy of the executive.

Like the Native American tribes in *Moe* and the bank in *Federal Reserve Bank*, the defendants in this case have interests closely aligned with those of the United States, enjoy the benefits of a jurisdictional statute giving them special access to the federal courts, and occupy a place in the structure of our government that justifies

allowing them to assert their tax immunity in federal court without first going hat-in-hand to the Attorney General. Having examined this case "in light of [the judges'] governmental role and the wishes of Congress as expressed in relevant legislation," *Federal Reserve Bank,* 499 F.2d at 64, we hold that Judges Acker and Clemon are eligible for the *Department of Employment* exception, and therefore, that the district court had jurisdiction to hear the case.

## III. CONCLUSION

We have reconsidered our decision in light of *Farm Credit Services*, and hold that under the facts of this case the defendants are eligible for the federal instrumentality exception. Therefore, the TIA does not operate to bar federal jurisdiction, and removal of the case was proper. Accordingly, we REINSTATE our *en banc* opinion on the merits and AFFIRM the district court's ruling.

AFFIRMED; EN BANC OPINION REINSTATED.


ANDERSON, Circuit Judge, dissenting, in which HENDERSON, Senior Circuit Judge, joins::

Respectfully, I dissent for the reasons set out in my dissent, and Judge Birch's dissent, to the initial en banc decision. Jefferson County v. Acker, 92 F.3d 1561, 1576-81 (11th Cir. 1996).

23

BIRCH, Circuit Judge, dissenting, in which HENDERSON, Senior Circuit Judge, joins:

I respectfully dissent for the same reasons set out in the initial en banc decision. Jefferson County v. Acker, 92 F.3d 1561, 1577-81 (11th Cir. 1996). Because I continue to view the tax at issue as nothing more than an income tax on the earnings of citizens who are also federal judges, I cannot agree that the federal instrumentality exception to the Tax Injunction Act applies. Accordingly, I believe the district court is without jurisdiction to hear this case.

CARNES, Circuit Judge, dissenting, in which HENDERSON, Senior Circuit Judge, joins:

The Supreme Court vacated our prior decision and remanded this case to us "for further consideration in light of Arkansas v. Farm Credit Services of Central Arkansas, 117 S. Ct. 1776 (1997)," a decision which applied the Tax Injunction Act, 28 U.S.C. § 1341. When the Supreme Court vacates and remands one of our decisions, the entire case comes back to us and we are free to bring a fresh perspective (and

hopefully fresh wisdom) to issues we have already addressed. <u>See</u> <u>Moore v. Zant</u>, 885 F.2d 1497, 1502 - 03 (11th Cir. 1989) (en banc). Instead of reinstating our prior decision affirming the district court, we should seize this opportunity to correct our earlier decision.

When this case was last before us, I joined the majority opinion which held that insofar as Jefferson County's occupational tax applies to federal judges it amounts to a tax on federal instrumentalities and violates the intergovernmental tax immunity doctrine. Since then I have been convinced that I was wrong to join that holding. I would like to think that I have become smarter and more learned in the law since our prior decision was issued, but there is no compelling evidence to support such a conclusion as to any member of this Court. My change of view is attributable instead to reading the amicus brief filed by the United States after this case left our Court and while it was before the Supreme Court on a petition for writ of certiorari. Reading that brief (which was incorporated as an appendix into the latest brief Jefferson County filed in this Court) and reflecting upon it, as well as re-reading some of the authorities cited has convinced me that I was wrong before.

Having finally seen the light, I join Judges Anderson, Birch, and Henderson in concluding that the occupational tax at issue in this case is a tax upon the "pay or compensation" of those to whom it applies, including federal judges. As such it falls within the consent to taxation Congress has given in the Public Salary Act, 4 U.S.C.

§ 111, and therefore does not violate the intergovernmental tax immunity doctrine. Application of the tax to federal judges is not unconstitutional.

As for the <u>Farm Credit Services</u> issue, I do not believe that the federal instrumentality exception to the Tax Injunction Act applies in this case. Accordingly, I would hold that the district court lacked jurisdiction, and I would vacate its judgment and remand with directions to dismiss the case for lack of jurisdiction. Assuming to the contrary that the Tax Injunction Act does not bar this action, I would reverse and remand the district court's judgment on the merits.