H. Boone PORTER, III, in his capacity as individual co-trustee of the H. Boone Porter Trust created under Deed of Trust dated 8/1/60 as amended by amendment dated 5/14/68, and individually, and in his capacity as Executor of the Estate of Rev. H. Boone Porter, Commerce Bank, N.A., a national banking association, in its capacity as corporate co-trustees of the H. Boone Porter Trust created under Deed of Trust dated 8/1/60, as amended by amendment dated 5/14/68;  Plaintiffs-Appellants, Cross-Appellees,

v.

OGDEN, NEWELL & WELCH, a Kentucky general partnership, Richard F. Newell, et al., Defendants-Appellees, Cross-Appellants.

No. 99-2289.

United States Court of Appeals,

Eleventh Circuit.

Feb. 15, 2001.

Appeals from the United States District Court for the Middle District of Florida.94-00051-CIV-J-16A), John H. Moore, II, Judge.

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

DUBINA, Circuit Judge:

The Trustees of the Estate of H. Boone Porter appeal the district court's order finding that a legal malpractice action against the Defendants had not accrued under Florida law because no injury had occurred. Also appealed are an order of a magistrate judge denying the Trustees' motion to compel and an order of the magistrate judge permitting the Trustees to obtain financial worth documents.  We affirm in part and reverse in part.

I. *BACKGROUND*

This case revolves around H. Boone Porter's ("H.Boone") will and deed of trust.  In 1960, the law firms of Rogers, Towers & Baily, (the "Bailey firm"), and Ogden, Newell, & Welch, (the "Ogden firm"),[1] jointly prepared a will and deed of trust for H. Boone. The law firms drafted the deed of trust to create a "double generation skipping trust" that would benefit H. Boone during his lifetime, then his wife and his son, Reverend Porter, and finally Reverend Porter's children and grandchildren.  Although H. Boone's estate included the trust corpus in his taxable estate, the generation skipping trust would provide great tax advantage to H. Boone by protecting the trust's corpus from taxation until the death of H. Boone's great-grandchildren.

In order to create a "double generation skipping trust," one must comply with the relevant tax laws, rules, and regulations.  Here, the Ogden firm reviewed the initial deed of trust drafted by the Bailey firm and

---

[1]Hereinafter, we refer to the Bailey firm and the Ogden firm collectively as "Defendants."

made suggestions to ensure compliance with the Internal Revenue Code ("IRC"). The Bailey firm made the suggested changes. One of these changes created a provision permitting Reverend Porter to assume a co-trustee position with the corporate trustee. Furthermore, at some point during the revision of the deed of trust, paragraph 8 of the deed of trust was drafted to state as follows:

> 8. The Trustee is authorized to pay, out of principal of the trust property, to or for the benefit of any beneficiary who at the time is entitled to receive income from the trust property, hospital, nursing, and medical expense of any such beneficiary, and also such amounts as may be considered advisable for the maintenance, support and *welfare* of any such beneficiary; but the amount or amounts of any such payments shall be determined by the Trustee in its sole discretion.

(Emphasis added). Plaintiffs complain that the inclusion of the word "welfare" in the above paragraph has caused the "double generation skipping trust" to fail.

Under current tax law, when a trust beneficiary holds a general power of appointment, the trust corpus must be included in his taxable estate. *See* I.R.C. § 2041(a)(2). A trust beneficiary has a "general power of appointment" if he has the power to distribute the corpus to himself as a beneficiary, except if the trust limits this power "by an ascertainable standard relating to the health, education, support or maintenance" of the beneficiary. *See* I.R.C. § 2041(b)(1). According to Treasury Regulation § 20.2041-1(c)(2), "[a] power to use property for the comfort, welfare or happiness of the holder of the power is not limited by the requisite standard." Thus, a provision in a trust instrument which allows for the paying out of the corpus to the beneficiary for his or her welfare is not limited and is treated as a general power of appointment. As a result, the Trustees believe that, upon the death of Reverend Porter, the trust corpus may be included in his estate for tax purposes because the deed of trust permits Reverend Porter to distribute funds for his welfare.

Reverend Porter discovered this potential problem in 1990 and attempted to remedy it. Reverend Porter's law firm informed him that federal tax law examines state law to determine whether the word "welfare" has an ascertainable standard. At that time, Florida law was unsettled as to the meaning of the word "welfare." In order to ensure favorable treatment under Florida law, Reverend Porter lobbied the Florida Legislature to change the law. He succeeded and the Florida Legislature changed the law so that the inclusion of the word "welfare" in a Florida trust instrument does not give the trustee the ability to do more than disperse limited amounts of the corpus, thereby complying with the limiting requirements of the tax laws.

After the change in Florida law, Reverend Porter hired the law firm of Miller & Chevalier to request a private letter ruling from the Internal Revenue Service ("IRS"). The law firm gave the IRS the facts of the case, including the changes in the Florida law, and requested its opinion. In response, the IRS stated that it

would not find the trust to be a part of the Reverend's estate.[2] *See* Priv. Ltr. Rul. 9510065. Because this letter ruling depended on the recently enacted Florida law, Reverend Porter took two other actions designed to ensure that the trust would achieve the generation-skipping result even if Florida changed its law. First, Reverend Porter succeeded in seeking a judicial reformation of the trust instrument to remove the word "welfare" from Paragraph 8, on the ground that the word's presence was a scrivener's error. Second, he sought another private letter ruling from the IRS. In response to Reverend Porter's inquiry, the IRS stated that the judicial reformation would not trigger any adverse tax consequences. *See* Priv. Ltr. Rul. 199942016.

Subsequently, the Trustees of Reverend Porter's estate brought this legal malpractice action to recover the costs expended in their efforts to avoid the general power of appointment problem.[3] The Trustees also sought a declaratory judgment requiring the Defendants to indemnify the Trustees for any adverse tax consequences resulting from the drafting error. In addition, the Trustees sought punitive damages pursuant to Florida Stat. § 768.72. On cross-motions for summary judgment, the district court dismissed the Trustees' complaint without prejudice on the ground that it was premature. The district court based its order on the conclusion that under Florida law, a tort action does not commence until damages have accrued, and that the Trustees have not suffered any damages because the IRS has not attempted to levy an estate tax on the trust's corpus. In the same order, the district court affirmed the magistrate judge's order permitting the Trustees to obtain confidential financial worth documents from the Defendants in support of the Trustees' punitive damages claim. In a previous order, the magistrate judge denied the Trustees' motion to compel answers to deposition questions prompted by two letters between the Ogden firm and its insurance carrier. On appeal, the Trustee's and Defendants challenge these orders.

## II. *ISSUES*

(1)     Whether the district court erred in dismissing as not ripe the Trustees' suit to recover the costs taken to avoid a potential consequence of Defendants' alleged malpractice.

(2)     Whether the magistrate judge erred in denying the Trustee's motion to compel answers to deposition questions prompted by two letters between the Ogden firm and its insurance carrier.

---

[2]A taxpayer ordinarily may rely upon a private letter ruling received from the IRS. *See* 26 C.F.R. § 601.201(*l*). Only in the rare and unusual circumstance will the IRS revoke or modify a private letter ruling and retroactively apply the change to the taxpayer who originally received the letter ruling. *See* 26 C.F.R. § 601.201(*l*)(5).

[3]Reverend Porter died on June 5, 1999. The value of the Trust on that date was approximately $55 million, which would yield a federal estate tax of approximately $ 30 million if the corpus was included in Reverend Porter's estate.

(3)      Whether the district court erred in affirming the magistrate judge's order permitting the Trustees to obtain confidential financial worth documents from the Defendants in support of the Trustees' punitive damages claim.

## III. *STANDARDS OF REVIEW*

This court reviews *de novo* a district court's determination that a case is not ripe for determination. *See Southeast Fla. Cable, Inc. v. Martin County,* 173 F.3d 1332, 1335 n. 5 (11th Cir.1999). We review a district court's discovery orders and evidentiary rulings for abuse of discretion. *See Goulah v. Ford Motor Co.,* 118 F.3d 1478, 1483 (11th Cir.1997).

## IV. *DISCUSSION*

The Trustees argue that the district court erred in two respects. First, the Trustees contend that expenses incurred to avoid the possible consequences of the alleged malpractice constitute damages, thereby allowing their claim to ripen.[4] Second, the Trustees assert that the magistrate judge abused his discretion by not requiring Defendants to answer certain deposition questions prompted by two letters between the Ogden firm and its insurance carrier. Defendants present one issue in their cross-appeal. They argue that the district court erred in permitting the Trustees to obtain confidential financial information from the Defendants in support of their punitive damages claim.

A.     *Ripeness*

Under Florida law, "[g]enerally, a cause of action for negligence does not accrue until the existence of a redressable harm or injury has been established and the injured party knows or should know of either the injury or the negligent act." *Peat, Marwick, Mitchell & Co. v. Lane,* 565 So.2d 1323, 1325 (Fla.1990). When a plaintiff bases a malpractice action on errors committed in the course of litigation, and the litigation proceeds to judgment, the redressable harm is not established until final judgment is rendered. *See Silvestrone v. Edell,* 721 So.2d 1173, 1175 (Fla.1998). The present case, however, does not involve litigation malpractice, but transactional malpractice. The district court construed Florida law as stating that in a transactional malpractice case, redressable harm is not established until the documents or legal items fail to achieve their designated purpose.

The district court, however, misconstrued Florida law. Instead of setting a fine-line, Florida courts hold that a malpractice action accrues when "it is reasonably clear that the client has actually suffered some

---

[4]Plaintiffs do not argue that the district court erred in dismissing their claim for a declaratory judgment requiring the defendants to indemnify them for any adverse tax consequences.

damage from legal advice or services." *See Throneburg, III v. Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, P.A.,* 659 So.2d 1134, 1136 (Fla.App. 4 District 1995). The district court correctly noted that most of the Florida cases hold that the cause of action in issue does not accrue until a court holds that the documents or legal items failed to achieve their designated purpose. Those cases are distinguishable from the case at bar, however, because in those cases, no concrete injury arose until a final court decision. In contrast, here the Trustees have suffered a concrete injury as to the expenses they incurred to remedy the alleged malpractice.

For example, in *Peat, Marwick,* 565 So.2d 1323, the Lanes claimed some deductions based on their accountants' recommendations for which the IRS subsequently issued a notice of deficiency challenging the claimed deductions. Following Peat, Marwick's advice, the Lanes challenged the determination in tax court, but ultimately agreed to an entry of a stipulated order which required them to pay a tax deficiency. As a result, the Lanes filed a malpractice suit against Peat, Marwick, who raised a statute of limitations defense. The Florida Supreme Court held that the Lanes' cause of action did not accrue when they received the IRS deficiency notice because the Lanes challenged the notice and, thus, did not suffer any injury at that time. *See Peat, Marwick,* 565 So.2d at 1326. Instead, the Florida Supreme Court held that the injury arose when the tax court entered judgment against the Lanes who in turn had a legal obligation to pay the tax deficiency. *See id.* at 1327.

Similarly, in *Throneburg,* the court held that a claim against an attorney for failure to amend properly a declaration of covenants on property did not accrue merely because the association thought the amendment ineffective. *See* 659 So.2d at 1136. Instead, the court held that the claim accrued when a state court ruled that the amendment was invalid in an action involving the same association and a different owner. *See id.*

Both *Throneburg* and *Peat, Marwick* "draw a distinction between knowledge of actual harm from legal malpractice and knowledge of potential harm." *Id.* In both cases, the plaintiffs followed the advice of the defendant professionals, even though others thought that the advice was wrong. Because they followed the incorrect advice, the harm did not become an actuality until a court rendered a judgment holding that the legal instruments failed to fulfill their purpose. In contrast, the Trustees here did not follow the advice of the Defendants, and instead, took steps to cure the potential problem prior to any IRS action or any court determination. By attempting to mitigate the potential problem, the Trustees realized an actual harm—the cost of remedying the potential malpractice.

Moreover, the Florida case of *Coble v. Aronson,* 647 So.2d 968 (Fla.App. 4 Dist.1994), supports this conclusion. In *Coble,* a law firm incorrectly prepared notes that were part of a sales agreement. The law firm's client sued for reformation of the contract and the case settled. In turn, the client sued the law firm for malpractice. The court stated that a cause of action had accrued even though the client had settled the reformation case because the existence of a redressable harm did not depend upon the outcome of the litigation. *See id.* at 970-71. Instead, the court found that the negligent preparation of the notes "could potentially be the cause of redressable harm or financial loss to [the client], especially in the nature of costs and attorney's fees." *Id.* at 971. Similarly, the redressable harm in the present case need not depend upon the outcome of any litigation because the negligent preparation of the will could potentially be the cause of the financial loss that the Trustees incurred in reforming the trust. Thus, we hold that the district court erred in dismissing the case as premature.[5]

Of course, the Trustees' task of proving malpractice and proving that the malpractice proximately caused the loss may be difficult because the Trustees cured the problem prior to any indication from the IRS that the trust would fail. However, we need not address these causation issues, since the district court did not address them. *See Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

B. *Discovery of Letters*

Likewise, we need not address the issue of whether the magistrate judge erred in denying the Trustee's motion to compel because the district court did not address this issue. *See id.* Although the Trustees timely filed a Fed.R.Civ.P. 72 objection to the magistrate judge's ruling, the district court dismissed the complaint before ruling on the objection. Accordingly, we decline to consider this issue for the first time on appeal. *See id.; see also* Fed.R.Civ.P. 72(a).

C. *Discovery of Financial Worth Documents*

Finally, the Defendants argue that the district court erred in affirming the magistrate judge's order permitting the Trustees to obtain confidential financial worth documents from the Defendants in support of the Trustees' punitive damages claim. First, Defendants argue that the magistrate failed to make an affirmative finding that a reasonable basis existed for the Trustees' punitive damages claim as required by

---

[5]The parties also discuss in their briefs whether the actions taken by the Trustees were reasonable. The district court did not address the issue and the record is not developed enough for us to do so either.

Florida Stat. § 768.72. However, after reviewing the record, we are persuaded otherwise. Second, the Defendants argue that the Trustees failed to establish a reasonable basis because they did not allege any facts outside of the complaint and, alternatively, did not allege sufficient facts to support a punitive damages claim. We disagree.

This court has held that the pleading rules set forth in Fed.R.Civ.P. 8(a)(3) preempt § 768.72's requirement that a plaintiff must obtain leave from the court before including a prayer for punitive damages. *See Cohen v. Office Depot, Inc.,* 184 F.3d 1292, 1299 (11th Cir.1999), *vacated in part,* 204 F.3d 1069 (11th Cir.2000). However, § 768.72 also has a discovery component which states that "[n]o discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted." Fla. Stat. § 768.72. Prior to allowing discovery of financial net worth information, Defendants argue that § 768.72 requires a plaintiff who has made a claim for punitive damages to produce evidence or make a proffer of evidence that shows a reasonable basis for the punitive damages claim. This court, in *Cohen,* did not decide whether or not federal discovery rules preempt this rule. Likewise, we need not answer this question here because the record indicates that the Trustees made a proffer of evidence that reasonably supports their claim.

The Florida courts do not require a fact intensive investigation into the merits. Instead, the Florida courts entertain the punitive damage issue by way of a motion to dismiss or a motion to strike, not a summary judgment motion. *See Will v. Systems Eng'g Consultants, Inc.,* 554 So.2d 591, 592 (Fla.App. 3 Dist.1989); *see also Solis v. Calvo,* 689 So.2d 366 (Fla.App. 3 Dist.1997) ("Pursuant to Florida Statute section 768.72 (1995), a punitive damage claim can be supported by a proffer of evidence. A formal evidentiary hearing is not mandated by the statute."). Under Florida law, merely setting forth conclusory allegations in the complaint is insufficient to entitle a claimant to recover punitive damages. *See T.W.M. v. American Medical Sys., Inc.,* 886 F.Supp. 842, 845 (N.D.Fla.1995); *Bankest Imports, Inc. v. ISCA Corp.,* 717 F.Supp. 1537, 1542-43 (S.D.Fla.1989). Instead, a plaintiff must plead specific acts committed by a defendant. *See Bankest Imports,* 717 F.Supp. at 1542-43.

Applying these legal standards, the magistrate judge found that the Trustees pled and proffered evidence of specific acts committed by the Defendants that provided a reasonable basis to support the Trustees' punitive damages claim. The district court affirmed this finding. After reviewing the record, we see no abuse of discretion in these rulings.

## V. *CONCLUSION*

We hold that the district court incorrectly found that the Trustees' claim had not accrued. The Plaintiffs have suffered losses in fixing the potential problems with the trust. Thus, the Plaintiffs have suffered an injury. Accordingly, we reverse that part of the district court's judgment. Next, we decline to address whether the magistrate judge erred in denying the Trustees' motion to compel because the district court did not address that issue. Finally, we hold that the district court did not abuse its discretion in affirming the magistrate judge's order permitting the Trustees to obtain confidential financial worth documents. Therefore, we affirm that part of the district court's judgment.[6]

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

[6]All pending motions in this case are DENIED.