**Mark Jacob JONES, Plaintiff,**

v.

**LAW FIRM OF HILL AND PONTON, Defendant.**

No. 6:00–CV–746–ORL31JGG.

United States District Court,
M.D. Florida,
Orlando Division.

March 26, 2001.

standing and whether Acadia and Wells Fargo were state actors in the context of this litigation.

Mark Jacob Jones, Brooklyn, NY, pro se.

Jaffrey Dean Starker, Hill & Ponton, P.A., Orlando, FL, for defendant.

## ORDER

PRESNELL, District Judge.

This cause came on for consideration without oral argument on the Report and Recommendation of the Magistrate Judge (Doc. 35, entered March 2, 2001) and Plaintiff's Objection (Doc. 36, filed March 12, 2001). After an independent *de novo* review of the record in this matter, including Plaintiff's Objection, this Court agrees that it is bound by Judge Conway's determination of the Plaintiff's domicile as of June 13, 2000 (*see* Doc. 8 in Case No. 6:00–cv–747–ORL–22A, entered July 6, 2000), and therefore Defendant's Motion to Dismiss for lack of subject matter jurisdiction must be granted.

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that:

1. Judge Glazebrook's Report and Recommendation (Doc. 35, entered March 2, 2001) is **ADOPTED** and **CONFIRMED** and made a part of this order.

2. The Motion to Dismiss (Doc. 18, filed September 18, 2000) is **GRANTED,** and this case is **DISMISSED WITHOUT PREJUDICE.**

3. All pending motions are **DENIED AS MOOT.**

4. The Clerk is directed to close this case.

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the following motion filed herein:

**MOTION: DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (Doc. No. 18)**

**FILED: September 8, 2000**

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED.**

Plaintiff brought this action against his former attorneys and law firm for legal malpractice, negligence, breach of fiduciary duty, and breach of contract. Defendants move to dismiss plaintiff's amended complaint for failure to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because this Court lacks subject matter jurisdiction over this matter, this action should be **DISMISSED.**

### I. BACKGROUND

#### A. Present Suit Against Former Law Firm

On June 13, 2000, Mark Jacob Jones, an inmate in custody of the Marianna Correctional Institution, PMB 7007, Marianna, Florida, filed this diversity action against his former attorneys and law firm Hill & Ponton, P.A. [hereinafter defendants collectively will be referred to as "Hill & Ponton"]. In his original complaint, Jones claimed that the defendants lived in Orlando, Florida, and that, prior to his incarceration, he lived in Jacksonville, Florida. Docket No. 1 at 1, 7. On August 22, 2000, Jones filed an amended complaint. Docket No. 15. In his amended complaint, Jones alleges that he is not a citizen of Florida, but rather a citizen of New York, where he had "lived and been for the past 30 years." Docket No. 15 at 8.

According to the amended complaint, on April 12, 1998, Jones broke his right foot in a slip and fall incident. The incident occurred on the Ramada Inn Vacation Resort property located in Orlando, Florida. Jones alleges that he hired the law firm

Hill & Ponton to represent him in his personal injury claim against Ramada Inn. On April 17, 1998, Jones and Hill & Ponton entered into a contingent-fee contract. On April 20, 1998, attorneys Brian Hill and Karen Marcell sent a letter to Jones stating that if they were not able to settle before suit, the suit will be prepared for a court decision.

Jones alleges that Hill and Ponton provided him with a "Statement of Client Rights," which provides that:

[i]f your lawyer begins to represent you, your lawyer may not withdraw from the case, without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often your lawyer must obtain court approval before withdrawing from a case.

Docket No. 15, Exhibit H to Complaint. On May 22, 2001, attorney Brian D. Hill sent a letter to Jones, advising Jones that Hill & Ponton would no longer be handling Jones's case. Jones claims that Hill & Ponton failed to provide Jones with notice, deliver necessary papers, or allow Jones time to employ another lawyer. Jones also claims that Hill & Ponton failed to provide Ramada Inn's insurance company, Reliance Insurance Co., with information that "could have help[ed] to settle [his claim]". Jones "believes" that Hill & Ponton withdrew as his counsel because they realized that Jones was in jail. Jones claims that documents related to his case were not provided to Jones until a year later on June 22, 2000. Jones alleges that in withdrawing as Jones's counsel, Hill & Ponton breached its contractual agreement, committed legal malpractice, negligence, professional misrepresentation, and fraud in the inducement.

On September 8, 2000, Hill & Ponton filed the present motion to dismiss the amended complaint. Docket No. 18. Hill & Ponton claim that the amended complaint fails to state a cause of action for legal malpractice or breach of contract, because Jones cannot sue his attorneys for legal malpractice until the underlying action against Ramada Inn has been finalized on the merits.[1]

On September 22, 2000, Jones filed a memorandum in opposition. Docket No. 20. In his memorandum, Jones states that after Hill & Ponton withdrew from representing him, he filed a *pro se* personal injury action against Ramada Inn on June 13, 2000. *See* Case No. 6:00–cv–747–Orl–22A.

**B. Jones's Suit Against Ramada Inn, Case No. 6:00–cv–747–Orl–22A**

On June 13, 2000, the same day Jones filed this present suit, Jones filed a diversity, personal injury action against Ramada Inn in this Court. *See* Docket No. 1, Case No. 6:00–cv–747–Orl–22A. Jones's suit against Ramada Inn sounded in negligence, and it concerned the same factual scenario outlined in the instant amended complaint: that Jones suffered a broken bone in his right foot while walking at the Ramada Inn Vacation Resort.

On June 20, 2000, in response to Jones's motion to proceed *in forma pauperis*, United States Magistrate Judge Karla R. Spaulding issued a Report and Recommendation, recommending that the complaint be dismissed for lack of subject matter jurisdiction—the complaint stated no federal question and there was no diversity of citizenship. Specifically, Judge Spaulding found that diversity jurisdiction did not

---

1. Hill & Ponton also claim that Jones's amended complaint should be dismissed for insufficiency of service of process.

exist because Jones "was a citizen of Jacksonville, Florida" and Ramada Inn (as alleged by the complaint) was a citizen of Orlando, Florida. Docket No. 4, Case No. 6:00–cv–747–Orl–22A.

Jones objected to Judge Spaulding's Report and Recommendation, arguing that he was a citizen of New York, not Florida, and that he had only "temporarily" lived in Jacksonville, Florida. Jones argued that he had lived in New York for the past 30 years and intended to make New York his permanent home after he was released from incarceration. Docket No. 5. On July 6, 2000, the Honorable Anne C. Conway adopted the Report and Recommendation over Jones's objections, dismissing the case for lack of subject matter jurisdiction. Docket No. 8. On July 17, 2000, Jones filed a motion for relief from judgment under Rule 60(b), again arguing that at the time he filed the complaint, *i.e.,* June 13, 2000, he was a citizen of New York, not Florida. Jones's motion was denied on July 24, 2000. Docket No. 11.

On July 17, 2000, Jones also filed a notice of appeal. Docket No. 10. On August 3, 2000, Judge Conway denied Jones's motion to proceed on appeal *in forma pauperis* because Jones had failed to make a substantial showing of the deprivation of any federal constitutional right. Docket No. 15. Jones's appeal is currently pending before the Eleventh Circuit, Case No. 00–14028–D. *See* Docket No. 16.

## II. *APPLICABLE LAW*

### A. Standard of Review

■ A court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45—46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir. 1990); *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986); *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (threshold is "exceedingly low"). In determining whether to dismiss a case, the Court accepts the allegations in the complaint as true, and otherwise views the allegations in the light most favorable to the plaintiff. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir.1992) citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). The Court does not generally accept conclusory allegations as true. *See South Florida Water Management District v. Montalvo,* 84 F.3d 402, 408 n. 10; *accord, Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974).

### B. Diversity Jurisdiction

■ Title 28 U.S.C. § 1332(a)(1) vests this Court with the authority to exercise jurisdiction over cases involving "citizens of different States." Diversity of citizenship jurisdiction exists only if the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a). The amount in controversy is satisfied unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

■ The party seeking diversity jurisdiction has the burden of establishing jurisdiction by a preponderance of the evidence. *Blakemore v. Missouri Pac. R.R. Co.,* 789 F.2d 616, 618 (8th Cir.1986). Diversity is determined when the suit is instituted, not when the cause of action

arose. *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); *Freeport–McMoRan, Inc., v. K N Energy, Inc.*, 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991); *Ray v. Bird & Son & Asset Realization Co.*, 519 F.2d 1081 (5th Cir.1975).[2] Diversity jurisdiction is unaffected by changes in citizenship of parties after complaint has been filed. *Mas v. Perry*, 489 F.2d 1396 (5th Cir.1974). If there is no diversity of citizenship as of the date of commencement of action, it cannot be created by a subsequent change of domicile by one of the parties. *Slaughter v. Toye Brothers Yellow Cab Co.*, 359 F.2d 954 (5th Cir.1966).

To be a citizen of a state within the meaning of the diversity provision, a natural person must be both a citizen of the United States and a domiciliary of a state. *Las Vistas Villas, S.A., v. Petersen*, 778 F.Supp. 1202, 1204 (M.D.Fla.1991); *Willis v. Westin Hotel Co.*, 651 F.Supp. 598 (S.D.N.Y.1986). A person is not necessarily a citizen of, or domiciled in, the state in which he resides at any given moment.[3] *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); *Jagiella v. Jagiella*, 647 F.2d 561, 563 (5th Cir. 1981). State citizenship, or "domicile" for purposes of diversity jurisdiction is determined by two factors: residence and intent to remain. *Holyfield*, 490 U.S. at 48, 109 S.Ct. 1597; *Scoggins v. Pollock*, 727 F.2d 1025, 1026 (11th Cir.1984); *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974); *Las Vistas Villas, S.A. v. Petersen*, 778 F.Supp. 1202 (M.D.Fla.1991).

In determining domicile, a court should consider both positive evidence and presumptions. *Mitchell v. United States*, 88 U.S. (21 Wall.) 350, 352, 22 L.Ed. 584 (1874). One such presumption is that the state in which a person resides at any given time is also that person's domicile. *District of Columbia v. Murphy*, 314 U.S. 441, 455, 62 S.Ct. 303, 86 L.Ed. 329 (1941); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir.1954). But because changes in residence are so common in this country, courts also refer to another presumption: once an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state. *Yeldell*, 913 F.2d at 537; *McDougald v. Jenson*, 786 F.2d 1465, 1483 (11th Cir.1986). However, these presumptions are merely aids for the court. The objective facts bearing on an individual's "entire course of conduct" determine domicile for diversity jurisdiction purposes. *Stine*, 213 F.2d at 448. No single factor is conclusive; instead, the Court looks to the "totality of evidence."

A prisoner's place of incarceration does not establish citizenship. *Polakoff v. Henderson*, 370 F.Supp. 690, 693 (N.D.Ga.), *aff'd*, 488 F.2d 977 (5th Cir. 1974). A prisoner's citizenship is determined by his domicile prior to incarceration. *Polakoff*, 370 F.Supp. at 693; *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir.1996) ("A forcible change in a person's state of residence does not alter his domicile; hence the domicile of [a] prisoner before he was imprisoned is presumed to remain his domicile while he is in prison."); *Lima v. Diaz*, No. 95–734–CIV–T–17B,

---

2. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

3. For purposes of diversity jurisdiction, the terms "citizenship" and "domicile" are synonymous. *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir.1990).

1995 WL 75922, at *1 (M.D.Fla. Dec.18, 1995).

## C. Collateral Estoppel or Issue Preclusion

■ Res judicata and collateral estoppel are separate and distinct doctrines. Res judicata refers to claim preclusion, whereas collateral estoppel refers to issue preclusion. *Christo v. Padgett*, 223 F.3d 1324 (11th Cir.2000); *see* 18 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2d, § 4402 (1981). Res judicata attaches when the same cause of action is litigated between the same parties in consecutive cases. *Christo*, 223 F.3d at 1338 n. 46. Under the rules of res judicata, when a plaintiff obtains a judgment, the effect of the judgment extends to the litigation of all issues relevant to the same claim between the same parties. 223 F.3d at 1338 n. 46.

■ Collateral estoppel or issue preclusion attaches when a subsequent litigation arises from a different cause of action. *Christo*, 223 F.3d at 1338. The prior judgment bars litigation only of those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first. *Christo*, 223 F.3d at 1338 n. 46. In order for collateral estoppel to apply, the following four elements must be satisfied: 1.) the issue at stake must be identical to the one involved in the prior litigation; 2.) that issue must have been actually litigated in the prior litigation; 3.) the determination of the issue in the prior litigation must have been necessary and essential to the judgment; and 4.) the party against whom collateral estoppel is asserted must have had a full and far opportunity to litigate the issue in the prior proceeding. *Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir.1998); *International*

*Ass'n of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125 (5th Cir.1975).

■ Collateral estoppel or issue preclusion applies to jurisdictional issues, as well as to other issues. *See North Georgia Electric Membership Corp. v. City of Calhoun*, 989 F.2d 429, 432—433 (11th Cir.1993); *Baris v. Sulpicio Lines, Inc.*, 74 F.3d 567, 571 (5th Cir.1996); *Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. Homestake Mining Co.*, 722 F.2d 1407 (8th Cir.1983). Collateral estoppel precludes a plaintiff from relitigating the same jurisdictional question after the first suit was dismissed for lack of federal jurisdiction—even though dismissal did not adjudicate the merits of the case. *See North Georgia Electric Membership Corp.*, 989 F.2d at 432—433; *Baris*, 74 F.3d at 571. In *North Georgia Electric Membership Corporation*, the Eleventh Circuit stated:

> Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims.

989 F.2d at 432—433 (quoting *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir.1980)); *see also Cutler v. Hayes*, 818 F.2d 879, 888 (D.C.Cir.1987) (standing may not be relitigated); RESTATEMENT (SECOND) OF JUDGMENTS § 20, cmt. billus. 1 (1982) (valid final judgment for lack of jurisdiction or improper venue does not bar relitigation of the claim, but does bar relitigation of the issues actually litigated). C. Wright, A. Miller, and E. Copper agree:

> Civil Rule 41(b) provides that a dismissal for lack of jurisdiction or improper venue does not operate as an adjudication upon the merits. This provision means only that the dismissal permits a second action on the same claim that

corrects the deficiency found in the first action. The judgment remains effective to preclude relitigation of the precise issue of jurisdiction or venue that led to the initial dismissal.

18 Wright, Miller, and Cooper, FEDERAL PRACTICE AND PROCEDURE, § 4436 at 338— 39 (footnotes omitted).

### D. Legal Malpractice

■ In a Florida legal malpractice action, the client carries the burden of establishing three elements: 1.) employment of the defendant attorney; 2.) failure of the attorney to exercise reasonable care, skill and diligence; and 3.) that such negligence was the proximate cause of damage to the plaintiff. *Bill Branch Chevrolet, Inc. v. Philip L. Burnett, P.A.*, 555 So.2d 455, 455 (Fla.App.1990); *Thompson v. Martin*, 530 So.2d 495, 496 (Fla.App.1988). An attorney's reasonable duties require an attorney to have the knowledge and skill necessary to confront the circumstances of each case. *See, e.g., Bill Branch*, 555 So.2d at 455; *State v. Meyer*, 430 So.2d 440, 443 (Fla.1983), overruled on other grounds sub nom. *State v. District Court of Appeal, First District*, 569 So.2d 439 (Fla.1990). In addition, "the attorney is under a duty at all times to represent his client and handle his client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity." *Smyrna Developers, Inc. v. Bornstein*, 177 So.2d 16, 18 (Fla.App.1965). *See also FDIC v. Martin*, 801 F.Supp. 617, 620 (M.D.Fla.1992); *Armour & Co. v. Lambdin*, 154 Fla. 86, 16 So.2d 805, 810–11 (1944); *Fernandez v. Cunningham*, 268 So.2d 166, 168 (Fla.App. 1972).

■ In a suit for legal malpractice, proof that the attorney's negligence proximately caused the client's harm is necessary for recovery. *See Sure Snap Corp. v. Baena*, 705 So.2d 46, 48 (Fla.App.1997).

Recently, in *Porter, III v. Ogden, Newell & Welch*, 241 F.3d 1334 (11th Cir.2001), the Eleventh Circuit case examined the law of the State of Florida in a legal malpractice action.

■ The Eleventh Circuit explained that, under Florida law, a cause of action for negligence does not accrue until the existence of a redressable harm or injury has been established and the injured party knows or should know of either the injury of the negligent act. *Porter, III*, 241 F.3d at 1338. When a plaintiff bases a malpractice action on errors committed in the course of litigation, and the litigation proceeds to judgment, generally the redressable harm is not established until final judgment is rendered. *Porter, III*, 241 F.3d at 1338. Thus, where the cause of action underlying the malpractice claim remains pending, a plaintiff generally cannot prove the required element of damage because the action may terminate favorably for the client. Under these circumstances, an allegation setting forth the disposition of the underlying proceeding is an ultimate fact that plaintiff must plead to state a cause of action for legal malpractice against defendants. *See Peat, Marwick, Mitchell & Co. v. Lane*, 565 So.2d 1323, 1324 (Fla.1990); *Conley v. Shutts & Bowen, P.A.*, 616 So.2d 523, 524 (Fla.App.1993); *Pennsylvania Ins. Guar. Ass'n v. Sikes*, 590 So.2d 1051, 1052 (Fla.App.1991).

■ Recently, the Supreme Court of Florida stated that in a litigation context, "a malpractice case is hypothetical and damages are speculative until the underlying action is concluded with an adverse outcome to the client." *Silvestrone v. Edell*, 721 So.2d 1173 (Fla.1998). However, Florida cases should not be read to require every party who suffers a loss and attributes that loss to legal malpractice to obtain a final determination of the underlying case before asserting a claim for legal

malpractice. The Eleventh Circuit recently explained that instead of setting a fine line, Florida courts hold that a malpractice action accrues when "it is reasonably clear that the client has actually suffered some damage from legal advice or services." *Porter, III*, 241 F.3d at 1338. The test for determining when a cause of action for attorney malpractice has accrued is whether the existence of redressable harm has been established. 241 F.3d at 1338.

In *Porter, III*, the law firms of Rogers, Towers & Baily, and Ogden, Newell, & Welch, negligently prepared a will and deed of trust, jeopardizing the trust's status under federal tax laws. The Trustees did not follow the advice of the law firms, and instead, took steps to cure the potential problem by reforming the trust prior to any IRS action or any court determination. In turn, the Trustees sued the law firms for malpractice. On cross-motions for summary judgment, the district court dismissed the Trustees' complaint without prejudice on the ground that it was premature. The district court based its order on the conclusion that under Florida law, a legal malpractice action does not commence until damages have accrued, and that the Trustees had not suffered any damages because the IRS had not attempted to levy an estate tax on the trust's corpus.

■ The Eleventh Circuit reversed the district court holding that by attempting to mitigate the potential problem, the Trustees realized an actual harm—the cost of remedying the potential problem. The Eleventh Circuit explained that the Trustees' redressable harm need not depend upon the outcome of any litigation because the negligent preparation of the will "could potentially be the cause of the financial loss that the Trustees incurred in reforming the trust." *Porter, III*, 241 F.3d at 1339; *see also Coble v. Aronson*, 647 So.2d 968 (Fla.App.1994) (holding that the malpractice action had accrued even though the client had settled the reformation case because the existence of a redressable harm did not depend upon the outcome of the litigation). Thus, it is not necessary to complete the litigation of the case giving rise to the malpractice claim if it is reasonably clear that the client has actually suffered some damage from legal advice or services.

## III. *APPLICATION*

### A. Jurisdiction

■ The Court's first inquiry is whether it has jurisdiction. Jones contends that this Court has diversity of citizenship jurisdiction. Specifically, Jones claims that the defendants are citizens of Florida. Docket No. 10. Jones also claims that at the time of his filing his complaint (dated June 13, 2000) he was a citizen of or "domiciled" in New York, where he has lived for the past 30 years and where he intends to return after release.[4] Docket No. 9 at 8. Jones's instant claim regarding his state of citizenship is legally and factually identical to the claim he brought before Judge Conway. *See* Docket Nos. 7, 10, Case No. 6:00–cv–747–Orl–22A (Jones's objections to Report and Recommendation and Jones's Rule 60(b) Motion for Relief from Judgment). Both this suit and Jones's previous suit against Ramada Inn were filed on the same day—June 13, 2000. Jurisdiction based on diversity of citizenship is determined as of the date the suit is commenced. Judge Conway has already determined that, for purposes of diversity

---

4. When Jones brought this action, he was a prisoner at the Florida Correctional Institute at Marianna. Docket No. 9 at 8. As noted above, Jones's state citizenship is determined not by his place of incarceration, but rather by his domicile prior to incarceration.

jurisdiction, on June 13, 2000 Jones's state of citizenship was Florida. Judge Conway's decision regarding jurisdiction stands as a collateral estoppel bar to relitigation of that issue. As determined by Judge Conway, this Court lacks subject matter jurisdiction over Jones's Florida state claims. Accordingly, Jones's instant action should be **DISMISSED** due to lack of jurisdiction.

Having found that this Court lacks subject matter jurisdiction over Jones's case, this Court need not reach the issue of whether Jones's amended complaint should be dismissed for failure to allege damages. In the event the Court finds that it has subject matter jurisdiction over Jones's case, it may be of assistance to the Court and to the parties to have a complete resolution of the damage issue. The Court therefore proceeds to determine whether Jones has failed to allege damages.

**B. Damages Occurrence**

Defendants claim that Jones's amended complaint should be dismissed because Jones has failed to allege damages. Specifically, defendants argue that Jones has failed to allege that his underlying personal injury claim against Ramada Inn has been finalized on the merits. Defendants contend that Jones's malpractice claim is hypothetical and his damages are speculative until his underlying action is concluded with an adverse outcome to Jones.

Clearly, the absence of damages precludes recovery for malpractice, negligence, breach of fiduciary duty, and breach of contract. As Jones stated in his memorandum in opposition, on July 5, 2000, Judge Conway dismissed Jones's personal injury complaint against Ramada Inn due to lack of jurisdiction. However, the dismissal of a complaint for lack of jurisdiction does not operate as an adjudication on the merits. *See North Georgia Electric* *Membership Corporation v. City of Calhoun,* 989 F.2d 429, 433 (11th Cir.1993). Defendants, therefore, correctly point out that Jones's underlying personal injury suit which hosted this malpractice action, has not been decided on the merits.

Nonetheless, as noted above, Florida law does not require every party who suffers a loss and attributes that loss to legal malpractice to obtain a final determination of the underlying action case before asserting a claim for legal malpractice. Rather, a plaintiff need only establish the existence of a redressable harm. This Court must determine whether Jones has reasonably made clear that he has actually suffered some damage from legal advice or services.

Having carefully reviewed Jones's amended complaint, and having allowed all inferences in favor of Jones, this Court finds that Jones has failed to allege the existence of a redressable harm. Jones claims that defendants failed to take his recorded statement as requested by Reliance Insurance Co., insurers of Ramada Inn; failed to serve a demand on Ramada Inn; failed to investigate and prepare the case for suit, as promised; and failed to advise Jones on how to proceed before withdrawing as counsel. Jones claims that as a result of Hill & Ponton's conduct, Jones was unable to participate in possible settlement negotiations, recover any monetary damages, or pay medical bills.

Jones has not pled any facts which lead the Court to believe that any damages have occurred. There is a four year statute of limitation period on Jones's personal injury claim against Ramada Inn. Fla. Stat. § 95.11(3)(a). Jones may still be successful in settlement negotiations or in a state court action against Ramada Inn. Jones's allegations that he may have been able to participate in "possible" settlement

or that the taking of his recorded statement "could have helped settle his claim" are too speculative. There must be more than mere speculation. There must be redressable harm.

## IV. *CONCLUSION*

For the reasons stated above, it is **RECOMMENDED** that Jones's amended complaint be **DISMISSED.**

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.